WILLIAM NOLAN *vs.* THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

JOHN NOLAN, ADMINISTRATOR OF DANIEL NOLAN, *vs.* THE SAME.

The question of negligence is a mixed question of law and fact. Where the court requires of a defendant some act which the law did not require, it is an error of law and can be reviewed. Where the court finds that the defendant failed to do some required act, it is a finding of fact and cannot be reviewed.

A railroad company should always be vigilant to prevent accidents, but owes no duty, as such, to run its trains so as to prevent accidents to persons unnecessarily and unlawfully on its tracks.

But the law requires of a company that the engineer in charge of a train shall, after the danger of an accident is discovered, do all he can to prevent it.

A railroad company is not bound, in the absence of any statutory require-

ment, to fence its road in such a way as to keep children from getting upon its tracks.

The fact that a child is but seven years of age does not create a duty towards him on the part of the company that would not otherwise have existed. Precautionary measures, having for their object the protection of the public, must as a rule have reference to all classes alike.

Combined facts do not make a case of negligence where each fact by itself does not involve a neglect of duty.

The care which a plaintiff must have exercised to be free from the imputation of contributory negligence, is reasonable care, which is that degree of care which may reasonably be expected from a person in his situation.

On a hearing in damages after demurrer overruled, in a suit for an injury by the defendant's negligence, the admission of the demurrer has no effect as evidence, but exhausts itself in throwing upon the defendant the burden of proving that he was not guilty of negligence, or that the plaintiff was guilty of contributory negligence; and either may be shown by a mere preponderance of evidence, the question standing, as in any other case, upon the proof alone.

[Argued October 30th—decided December 14th, 1885.]

Two ACTIONS for injuries from the negligence of the defendants in the running of one of their trains, brought to the Superior Court, and tried together to the jury before *Stoddard, J.*

One of the plaintiffs was William Nolan, who was seriously injured by being struck by the locomotive of the defendants' train, and the other was John Nolan, administrator of the estate of Daniel Nolan, who was killed by the same accident.

The defendant demurred, and the demurrer was overruled and the case heard in damages before *Stoddard, J.*, who made a finding of the facts, and rendered judgment for $1,500 damages in the case of William Nolan, and for only nominal damages in the case of Daniel Nolan. The defendants appealed to this court in the former case and the plaintiff in the latter. The facts are sufficiently stated in the opinion.

*H. S. Sanford* and *M. W. Seymour*, for the defendants.

1. Negligence is a mixed question of law and fact. The court has repeatedly so held. *Dimock* v. *Town of Suffield*,

30 Conn., 129; *Knight* v. *Goodyear Glove Manf. Co.*, 38 id., 438; *Strouse* v. *Whittlesey*, 41 id., 559; *Parker* v. *Union Woolen Co.*, 42 id., 399; *Peck* v. *N. York, N. Hav. & Hartford R. R. Co.*, 50 id., 379. Negligence is a failure to discharge a legal duty. *Phila. & Reading R. R. Co.* v. *Hummell*, 44 Penn. St., 375; Shearm. & Redf. on Neg., § 2; Wharton on Neg., § 1. So far as negligence is found by the court below, the question can be reviewed on error if the court held the defendant to a duty which the law did not impose.

2. The defendant was not guilty of negligence on the facts detailed in the finding. It is found that when the danger of an accident was discovered everything possible was done to prevent it. Less than seven seconds before the accident the engineer saw the boys start to run down from a perfectly safe place towards the engine. The defendant was not bound to so fence in its road as to exclude children; it would have been impracticable. No statute requires it, and such a requirement would not be reasonable. And the defendant was not bound to run its trains slowly along this part of its track, in which the public had no right of passage. It's only duty was not to act with recklessness or gross carelessness. *Blyth* v. *Topham*, Cro. Jac., 158; *Terre Haute, &c. R. R. Co.* v. *Clark*, 73 Ind., 168; *Chicago, Burl. & Quincy R. R. Co.* v. *Harwood*, 80 Ill., 88; *Bemis* v. *Conn. & Pass. River R. R. Co.*, 42 Verm., 375; *Grows* v. *Maine Central R. R. Co.*, 67 Maine, 100; *Sweeny* v. *Old Colony R. R. Co.*, 10 Allen, 372; *Johnson* v. *Boston & Maine R. R. Co.*, 125 Mass., 75; *Morrissey* v. *Eastern R. R. Co.*, 126 id., 377; *Wilds* v. *Hudson River R. R. Co.*, 24 N. York, 430; *Bulger* v. *Albany Ry. Co.*, 42 id., 459; *Warner* v. *N. York Central R. R. Co.*, 44 id., 469; *McKenna* v. *N. York Central R. R. Co.*, 8 Daly, 304; *Phila. & Reading R. R. Co.* v. *Hummell*, 44 Penn. St., 375; *Gillespie* v. *McGowan*, 100 id., 144; *Maher* v. *At. & Pacific R. R. Co.*, 64 Misso., 267; *Peck* v. *N. York, N. Hav. & Hartford R. R. Co.*, 50 Conn., 392; *Lygo* v. *Newbold*, 9 Exch., 302; *Binks* v. *So. Yorkshire Ry. Co.*, 3 Best & Smith, 244; *Singleton* v. *Eastern Counties Ry. Co.*, 7 Com. B., N. S., 287; *Hounsell* v. *Smith*, id., 731.

The law does not require any one to presume that another may be negligent or a wrong-doer. *Reeves* v. *Del., Lack. & Western R. R. Co.*, 30 Penn. St., 454; *Brown* v. *Lynn*, 31 id., 510.

3. The age of the boy William was not a reason why he could not be guilty of contributory negligence. *Singleton* v. *Eastern Counties Ry. Co.*, 7 Com. B., N. S., 287; *Phila. & Reading R. R. Co.* v. *Hummell*, 44 Penn. St., 375. If he was too young to be able, as matter of law, to contribute to his own injury, the negligence of his mother in sending him across the track and in allowing him to play about the track, was in law his negligence and will prevent a recovery. *Hartfield* v. *Roper*, 21 Wend., 615; *Wright* v. *Malden & Melrose R. R. Co.*, 4 Allen, 283; *Callahan* v. *Bean*, 9 id., 401; *Ewen* v. *Chicago & N. Western R. R. Co.*, 38 Wis., 613, 628.

4. The court did not apply the correct rule with regard to the effect of the demurrer upon the question of the negligence of the defendant. It treated the admission as evidence in the case and as such to be overcome by the defendant's evidence. The utmost effect of it was to put upon the defendant the burden of proof upon the question whether it had used due care. *Crane* v. *Eastern Transportation Line*, 48 Conn., 361.

*R. E. DeForest*, for the plaintiffs.

1. The court below finds that William Nolan suffered injuries to the extent of $1,500. This judgment must stand unless the court can see, from the facts found, that the defendant was free from negligence or the plaintiff guilty of contributory negligence. The admission of the demurrer imposed upon the defendant the burden of proving one or the other of these points. *Crane* v. *Eastern Transportation Line*, 48 Conn., 361. It would not be enough if the court had not found negligence in the defendant; there must be a positive finding, or a necessary legal inference from the facts found, that the defendant was free from negligence or the plaintiff guilty of it.

2. The court has not found any such fact, and this court cannot, upon the facts found, infer as matter of law that the defendant was not guilty of negligence or that the plaintiff was guilty of contributory negligence.   On the contrary the facts clearly show gross and even criminal negligence in the defendant in the running of its train.   In the case of *Daley* v. *Nor. & Wor. R. R. Co.*, 26 Conn., 591, this court held that it was negligence in the defendant to run a train at the rate of from five to eight miles an hour through the city of Norwich, twenty-five years ago, when it was a comparatively small town, and that on a right of way completely walled in, and where no general and customary use of the track by the traveling public was shown.   "Indeed," says the court, "we think that locomotives with trains of cars attached should not be allowed to pass through the inhabited parts of our cities with such force or speed as to be incapable of immediate and absolute control, and even then not without special care to see that the track is all clear in its curves and more difficult places."   At the place of the accident the defendant had laid out its double track through a thickly settled portion of a city of thirty-five thousand inhabitants, immediately between and adjoining two of the highways and principal thoroughfares of that city, and over these tracks it was running in opposite directions at least fifty-two trains of cars every day.   Now, a single train of cars is, of itself a highly dangerous thing, however slowly it may be moving, and to propel it at the most moderate speed in a place comparatively unfrequented, where however children and even adults would be likely to come in unsafe proximity to it, without taking every precaution that human foresight and skill could suggest and provide to prevent accident, would upon principles of the common law be condemned as actionable carelessness.   *Lynch* v. *Nurdin*, 1 Q. B., 29; *Clark* v. *Chambers*, L. R., 3 Q. B. Div., 339; *Railroad Co.* v. *Stout*, 17 Wall., 657; *Johnson* v. *Hudson River R. R. Co.*, 20 N. York, 65; *Hydraulic Works Co.* v. *Orr*, 83 Penn. St., 332; *Keefe* v. *Milw. & St. Paul R. R. Co.*, 21 Minn., 207; *Whirley* v. *Whiteman*, 1 Head, 610; *Birge* v. *Gardiner*, 19 Conn. 507.

For the defendant to fence its tracks at the place of the accident would have been a simple and inexpensive precaution, and upon the plainest principles of the common law, it was its obvious duty; and its neglect to do this, in the absence of any statute, would have been culpable negligence. Pierce on Railroads, 409; *Isbell* v. *N. York & N. Haven R. R. Co.*, 27 Conn., 393, 403; *Quimby* v. *Vermont Central R. R. Co.*, 23 Verm., 387; *Trow* v. *Vermont Central R. R. Co.*, 24 id., 487; *Kerwhacker* v. *Cleveland, Col. & Cin. R. R. Co.*, 3 Ohio St., 199; *Smith* v. *Milw. & St. Paul R. R. Co.*, 23 Wis., 186; *In re Rens. & Saratoga R. R. Co.*, 4 Paige, 553. But at the time of the accident a statute required such fencing. Gen. Stats., p. 326, sec. 42, repealed in 1881. See Acts of 1878, ch. 51, and Acts of 1881, ch. 66. In defiance, therefore, of both common law and statutory obligations the defendant left its tracks so running through this populous district, entirely unfenced, and with no barrier whatever separating the highway from the tracks. As a natural consequence the public had overlooked the distinction between the railroad's right of way and the general right of way, and (in the language of the finding) "all parts of the right of way of the defendant company lying contiguously to said streets were, at the time of the accident, and for many years prior thereto had been, very largely and generally used by the public for passing and repassing on foot, at pleasure, in all directions. But this was not all. With full knowledge of this unfenced condition of its tracks and of this public use, well knowing that, at all hours men, women and children would be thronging this part of its right of way, the defendant drives its engine and train through it at the rate of eighteen miles an hour, and with such momentum that it could not be stopped, with all the force of hand-brakes and air-brakes, until it had gone a distance of nearly eight hundred feet. Beyond all this, the defendant had so laid its tracks and arranged the running and meeting of the trains at this point, that the engineer was required to be on the other side of the engine, and actually, on the side of the track where the accident happened, there was

no lookout whatever to avert accident. Moreover, the fact that the two trains met here, rendered the signals of the train from the east practically useless. If all these circumstances combined do not constitute a case of negligence, gross and criminal, beyond all possibility of evasion or excuse, it is difficult to imagine what negligence is. The authorities seem to agree as to the negligence involved in such conduct. *Continental Improvement Co.* v. *Stead*, 95 U. S. Reps., 164; *New Jersey Railroad & Transp. Co.* v. *West*, 32 N. Jer. Law, 91; *Phila. & Reading R. R. Co.* v. *Long*, 75 Penn. St., 265; *Phila. City Ry. Co.* v. *Hassard*, id., 367; *Penn. R. R. Co.* v. *Lewis*, 79 id., 33; *Wilds* v. *Hudson River R. R. Co.*, 29 N. York, 326; *Massoth* v. *Del. & Hudson Canal Co.*, 64 id., 524; *Cordell* v. *N. York Central R. R. Co.*, 70 id., 124; *Toledo, &c. R. R. Co.* v. *Foster*, 43 Ill., 413; *Kerr* v. *Forgue*, 54 id., 484; *Chicago & Alton R. R. Co.* v. *Gregory*, 58 id., 226; *Toledo, &c. R. R. Co.*, 71 id., 346; *Chicago & Alton R. R. Co.* v. *Murray*, id., 601; *Chicago, &c. R. R. Co.* v. *Becker*, 84 id., 484; *Wabash, &c. R. R. Co.* v. *Hencks*, 91 id., 412.

3. Neither of the plaintiffs was guilty of contributory negligence. The court has found that William Nolan was not, and this is conclusive as to him, as the court finds it as a fact and the question as here presented is one of fact. *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566; *Park* v. *O'Brien*, 23 id., 346; *Brennan* v. *Fair Haven & Westville R. R. Co.*, 45 id., 284. As to Daniel the court finds contributory negligence, but in this case not as a fact, but as an inference from the facts. The court says: "I am of opinion, and therefore find upon said facts, that he was contributorily negligent." The finding may therefore be reviewed; and as the burden of proof is on the defendant to show such negligence, the court is to reverse the judgment unless the facts are such as require the inference that there was such negligence. So far from this, the facts show that there was none. It clearly is not negligence for a child of ten years to be so near a railroad track as to be struck by the engine. And it clearly does not constitute negligence

for a child or indeed any person to be upon an open part of the track, passed over by the public, between two streets of a city, even if technically a trespasser. *Birge* v. *Gardiner*, 19 Conn., 507; *Daley* v. *Nor. & Wor. R. R. Co.*, 26 id., 591; *Isbell* v. *N. York & N. Haven R. R. Co.*, 27 id., 393; *Woolf* v. *Chalker*, 31 id., 121; *Railroad Co.* v. *Stout*, 17 Wall., 657. But persons passing along such a place are not to be regarded as even technically trespassers. *Ill. Central R. R. Co.* v. *Hammer*, 72 Ill., 347; *Kay* v. *Penn. R. R. Co.*, 65 Penn St., 269; *Penn. R. R. Co.* v. *Lewis*, 79 id., 33; *Dublin, &c. Ry. Co.* v. *Slattery*, L. R., 3 App. Cas., 1155.

4. But the youth of the plaintiffs renders it impossible for the court to say, as matter of law, that they were negligent. The rule as to persons of mature years is not to be applied to them. It is a question wholly of fact whether such children are, in the particular case, of sufficiently mature judgment to use ordinary care, and whether that degree of care was used which persons of that age would ordinarily exercise. *Birge* v. *Gardiner*, 19 Conn., 507; *Daley* v. *Nor. & Wor. R. R. Co.*, 26 id., 591; *Brennan* v. *Fair Haven & Westville R. R. Co.*, 45 id., 284; *Lovett* v. *Salem & So. Danvers R. R. Co.*, 9 Allen, 557; *Lynch* v. *Smith*, 104 Mass., 56; *Oldfield* v. *N. York & Harlem R. R. Co.*, 14 N. York, 314; *Drew* v. *Sixth Av. R. R. Co.*, 26 id., 51; *O'Mara* v. *Hudson River R. R. Co.*, 38 id., 445; *Ihl* v. *Forty-second St. R. R. Co.*, 47 id., 317; *Thurber* v. *Harlem Bridge, &c. R. R. Co.*, 60 id., 326; *Byrne* v. *N. York Central R. R. Co.*, 83 id., 620; *Dowling* v. *N. York Central R. R. Co.*, 90 id., 670; *Robinson* v. *Cone*, 22 Verm., 225; *Phil. & Reading R R. Co.* v. *Hassard*, 75 Penn. St., 367: *Kerr* v. *Forgue*, 54 Ill., 484; *Chicago & Alton R. R. Co.* v. *Gregory*, 58 id., 226; *Same* v. *Murray*, 71 id., 601; *Same* v. *Becker*, 84 id., 484; *Railroad Co.* v. *Gladmen*, 15 Wall., 406; *Railroad Co.* v. *Prout*, 17 id., 657; *Lynch* v. *Nurdin*, 1 Queen's Bench, 29; *Bilbee* v. *London, &c. Ry. Co.*, 18 Com. B., N. S., 590.

CARPENTER, J. The facts common to both cases are

briefly these:—Daniel and William Nolan were children of John and Mary Nolan, of the ages of ten and seven respectively, and lived with their parents at Bridgeport. They were ordinarily intelligent, and had the use of all their faculties. East Main Street in Bridgeport crosses the defendant's double track railroad at nearly right angles. East Washington Street, on the north of the tracks, for about two hundred feet west of the crossing, lies alongside of the tracks, while Crescent Avenue, on the south of the tracks, lies alongside for a much greater distance westward. West of the crossing the tracks lie nearly level with the surface of Crescent Avenue for the entire distance. On the north, towards East Washington Street, there rises a bank which, at the place of the accident, was about five and one half feet high above the railroad gutter. The slope of the bank is wholly within the limits of the right of way of the railroad company, that right extending some six feet further north than the crest of the bank. The crest is level with the surface of East Washington Street. This locality is a thickly populated district of the city, and all parts of the defendant's right of way lying contiguously to these streets were, at the time of the accident, and for many years prior thereto had been, very largely and generally used by the public for passing and repassing on foot at pleasure and in all directions. The defendant was at all times familiar with such use. The two children who were injured had lived in this vicinity for some time, and were familiar with this public use of the defendant's right of way. There was and had been no fence or other barrier or obstruction, except the bank and the ordinary railroad gutter, between the railroad tracks and the street and avenue.

The place of the accident is about one hundred and fifty feet west of East Main Street crossing. On the 15th day of October, 1880, the mother sent the two children to a drug store to make a small purchase, directing them to hurry home. They went directly to the store, crossing the railroad at East Main Street crossing, made the purchase, and started to return home, when their attention was drawn

to some other children a little west of the drug store at or near the crest of the bank, and on or near the right of way of the defendant. Thereupon they crossed the street and joined the other children, and remained standing there a minute or two, doing nothing except to speak to the children. At this time the express train from New York was due, and came from the west on the south track, giving the usual signals. The train from New Haven was due, and came from the east on the north track. The rear car of the east bound train crossed East Main Street as the engine of the west bound train came to the crossing. It is found that "the attention of these two children was attracted and fixed upon the train from the west, and just after it had passed the place of the accident William started to go home diagonally across the railroad track and right of way, and ran down the slope of the bank towards the tracks. Daniel immediately followed William, running down the bank but a little to the east of William. The children had not quite reached the north rail of the north track when the piston barrel or the bunter of the engine of the train from the east struck Daniel, inflicting such injuries that he died from the effects thereof four days thereafter. William was struck either by some part of the engine, or Daniel was, by force of the blow given him, thrown violently against him." William was seriously injured. The engineer of the train from New Haven gave the usual signal, and no negligence in that regard is complained of.

The place of the accident was not at any regular street crossing, but was about one hundred and fifty feet west of East Main Street. There is a considerable curve in the tracks, making a southerly concave easterly from the place of the accident for some six hundred or more feet.

The engineer, as he approached East Main Street crossing, stepped from the north side of the engine over to the south side to watch the crossing for persons coming from the south, as his engine was coming to and about to cross the highway, just as, or immediately after, the rear of the train from New York was passing or had passed over the

crossing. For this purpose he remained on the south side of his engine until he got to the crossing, when he returned to the north side, and then saw the boys running down the bank. No complaint is made that he did not then do all that was possible to be done to avoid the accident.

The finding continues as follows:—"I find that neither of the children had his attention drawn to the train from New Haven; they did not see or hear it or know of its approach until immediately before the accident, nor until it was impossible for them to avoid the collision. And I am not able to find whether they knew of the approach of the train from New Haven until they were struck."

The train was moving about eighteen miles an hour. At that time about fifty-two trains passed the place of the accident during each twenty-four hours.

Upon these facts the court below held that the defendant was liable to Daniel for nominal damages only, and to William for substantial damages. The plaintiff appealed in the former case, and the defendant in the latter.

Two questions arise in each case:—Was the defendant guilty of negligence? Was the plaintiff guilty of contributory negligence? The court below held that the defendant was negligent; also that Daniel was guilty of contributory negligence, and that William was not.

The finding as to negligence, so far as it is a question of fact, cannot be reviewed by this court; so far as it is a question of law it can be. It becomes important, therefore, to distinguish between law and fact. So far as the defendant is concerned, negligence may be defined to be a failure to perform some act required by law, or doing the act in an improper manner. The law determines the duty; the evidence shows whether the duty was performed. What duty rested upon the defendant was a question of law; was that duty properly performed was a question of fact. If the court required of the defendant some act which the law did not require, it erred in a matter of law, and the question may be reviewed by this court. If the court simply found that the defendant failed to do some required

act, that is a finding of fact, and cannot be reviewed. The main question here is a question of duty and not a question of performance, and is therefore a question of law.

It would have simplified the case somewhat if the court had told us the specific duty or duties which the defendant failed to perform. As that was not done, we are required to consider the several duties suggested and claimed by counsel. What duty, therefore, did the law impose upon the defendant upon these facts?

In the first place, it required the engineer, after the position of the boys was discovered, to do all that could be done to prevent the accident. On this point the finding is explicit: "As soon as he could, the engineer gave two or three sharp whistle sounds, and with the other hand turned on the air-brakes. * * * Everything possible was done to stop the train, and it was stopped as soon as it could be."

In the second place, it is claimed that the train should have been run at a much lower rate of speed. This claim stated in another form is, that the defendant should have run its passenger train at this point very slowly, so that the public might safely use the railroad tracks and right of way, "passing and repassing on foot at pleasure and in all directions." We think the law imposed upon it no such duty.

In the third place, it is said that the track was so constructed, and the arrangement of the trains was such, that the attention of the engineer was required on the other side, so that there was no lookout to avert accident on the side of the track where the accident happened, and that this was negligence. The strength of this argument lies in the assumption that men, women and children had a right at all times to be on the track at that place, and that it was the duty of the defendant's servants and employés to be upon the watch and run its trains so as not to interfere with the exercise of that right, or at least so as to prevent accidents. We recognize no such right in the public, and fail to discover that the defendant owed any such duty.

At the East Main Street crossing people had a right to pass and repass, and the engineer might well anticipate the possibility of their being about to do so as the train approached, and to be on the watch so as to be prepared instantly to do everything possible to prevent a collision. It was necessary and lawful for people to cross the railroad at that point, using, of course, due care. On the other hand it was unnecessary and unlawful for any one to be on the track at the place where these boys were injured. The first and principal duty of the engineer was to look out for people at the regular crossing. Doubtless some attention is due to possible wrong-doers, but not at the expense of others. An engineer must be diligent to see that the track is clear. Due diligence depends upon the circumstances of each case. These boys came suddenly and unexpectedly in the way of the train. It does not appear that the engineer could have discovered that they would do so any sooner than he did. There seems to have been no duty neglected by the engineer; and the defendant was under no obligation to locate its tracks, and adjust the running of its trains, so as to make it safe for persons unlawfully to trespass on its right of way.

In the fourth place, it is insisted that the defendant should have fenced its road. It is difficult to see how a fence could have been constructed at such a place so as to keep boys off the track. No ordinary fence is much of an obstruction to an active boy, and the track must necessarily be open at the street crossings. But aside from this, fences along the line of railways are required not to protect rational, intelligent beings, but animals incapable of protecting themselves. Reasonable beings are not supposed to need such protection. We are aware of no instance in which a fence is required by statute for such a purpose. We will not undertake to say that there may not be cases in which it will be wise for the legislature, or the railroad commissioners, under the general police powers entrusted to them, to require fences to keep heedless and unthinking persons off from railroad tracks; but in the absence of such

regulations we are not prepared to say that in this case it was the duty of the defendant to have constructed a fence.

We are further told that these circumstances combined "constitute a case of negligence gross and criminal." But the learned counsel has not told us just what duty this combination imposes upon the defendant; and we are at a loss to know what duty is intended other than those we have specifically considered. We have endeavored to show that each circumstance is in itself insufficient to raise the particular duty named; and we are of the opinion that the circumstances do not supplement each other so as to raise any one of the alleged duties. The rate of speed, the arrangement of the tracks, the meeting of trains, and the absence of a fence, are not circumstances which are entitled to much more weight when combined than when taken singly; and so far as they do strengthen each other the same fatal vice attaches, namely, that the supposed duty has for its sole object the protection of wrong-doers, or, at least, of persons who have no excuse for being in the way of passing trains.

We do not think that the tender age (seven years) of one of these plaintiffs can have the effect to raise a duty where none otherwise existed. The supposed duties have regard to the public at large, and can not well exist as to one portion of the public and not to another under the same circumstances. In this respect children, women and men are upon the same footing. In cases where certain duties exist infants may require greater care than adults, or a different kind of care; but precautionary measures having for their object the protection of the public, must, as a rule, have reference to all classes alike.

Our conclusion is that the facts stated disclose no duty which the defendant owed to either of these plaintiffs, and which was neglected.

We have thus far considered the case irrespective of the pleadings. The demurrer admits a cause of action. In the absence of proof the plaintiff can recover nominal damages only. But when the proof is in and the facts are

found, the burden of proof ceases to be important, and the admission of the demurrer has no effect except to carry nominal damages and costs, if the facts, independent of the pleadings, show that the defendant is not liable. If the plaintiff recovers substantial damages it is because he is entitled to them on the facts.

The finding as to the defendant's negligence is as follows:—" Taking into account all the circumstances—the speed of the train, the fact of meeting another train at the point in question and upon this curve (which required the presence of the engineer temporarily on the south side of the engine), and at or near the crossing, the populous character of this part of the city, the known public use and unguarded and unfenced condition of the tracks, and the other facts in the case, I cannot find from the evidence that the defendant proved as a matter of fact that there was no negligence on the part of the defendant." It will be observed that the court was careful not to find that the plaintiff proved that the defendant was negligent. Evidently in this state of things the court regarded the admission by the demurrer as entitling the plaintiff to full damages. In other words, the admission was thrown into the scale as evidence, which, we think, was an erroneous use of it. But this is not of any practical importance in this case, as, for the reasons stated, we think that the facts show that the defendant omitted no duty.

The view we take as to the alleged negligence of the defendant would seem to dispose of the case of Daniel; but as the plaintiff in that case appealed, and as the question raised and discussed relates to contributory negligence, it is proper that we should say a few words on that question.

The court finds as follows:—" In the case of Daniel, considering his age and capacity, with the other facts in the case, I am of the opinion, and therefore find upon and from said facts, that he was contributorily negligent." We must regard that as conclusively determining that Daniel was in fact negligent. There is no question here as to duty. The legal question is clear; it was the duty of the plaintiff's

intestate—a duty which in some sense he owed to the defendant—to use ordinary diligence or reasonable care to avoid accident. Whether he performed that duty is a question of fact, and was properly disposed of as such. There is no ground for saying that the court legally erred in so holding. Indeed, assuming, as we must, that all the material and substantial facts are correctly presented to us, we do not hesitate to say that the question was properly disposed of.

In *Beers* v. *Housatonic Railroad Co.*, 19 Conn., 566, this court, quoting from the English cases, laid down the rule as to the care required of plaintiffs in such cases, as follows: —" It must be ordinary care, which means ' that degree of care which may reasonably be expected from a person in the plaintiff's situation,' and is synonymous with reasonable care." Apply that rule to the case at bar. Do boys ten years of age ordinarily run against a locomotive, in motion, and running eighteen miles an hour? Is that what may reasonably be expected from such boys in the situation of the plaintiff? Was that reasonable care? On the contrary, is not the instinct of self-preservation as strong at that age as it ever is? Do they not sense danger of this kind as quickly and act as promptly to avoid harm as people generally?

It was broad daylight; the approaching train gave the alarm; no reason appears why the boy could not see and hear; and yet, by some strange fatality, he does not heed the warning, but rushes on until struck by the locomotive and fatally injured. Such conduct, instead of being ordinary, was extraordinary; instead of being usual, was very unusual; instead of being what might be expected, was unexpected and surprising.

We are not at liberty to follow counsel into the region of speculation for the purpose of finding a motive which will make his conduct free from blame. We are compelled to take the facts as they are presented to us in the record. It is a sad case, and appeals powerfully to one's sympathy, but we must not allow it to be an occasion of injustice. The

defendant is entitled to have the law fairly and impartially administered.

The case of William is different. The court says:— "I cannot find that the defendant proved that in attempting to cross said tracks, when and in the manner he did make the attempt, the child did anything that ordinary children of like age, capacity and prudence, under the like circumstances, would not ordinarily do." Taken literally, the court required of the defendant something which the law did not require; but doubtless the usual course was taken; the facts were shown and then left for the court to say whether his conduct was reasonable care. And yet it is quite possible that if the court had adopted this simple rule—Was the plaintiff's conduct such as might reasonably be expected from one in his circumstances? the result would have been different.

Again, there is some reason for thinking that the court in this branch of the case also used the admission in the pleadings as substantive evidence against the defendant— as evidence which must be overcome, or the plaintiff would be entitled to full damages. We cannot account for the peculiar and unusual language of the finding upon any other theory. If the supposition is correct, we think the court gave an effect to the pleadings not warranted by law. We repeat, the only legitimate effect of such an admission in a case like this is to give the plaintiff nominal damages. Actual damages must depend upon the proof. The burden is on the plaintiff to show the extent of the damage. When he has done that he may rest. Then it is competent for the defendant to show that the actual damage is less. He may also reduce the damages by showing no negligence in himself or contributory negligence in the plaintiff. In respect to negligence the defendant assumes the burden of proof; that is cast upon him by the admission. But he may prove that he was not negligent by a mere preponderance of proof, and the preponderance required is not increased by the admission in the pleadings. The question stands like any other question in any other case, upon the proof alone.

The court, however, in the case of Daniel, upon precisely the same facts, except that Daniel was three years older, found contributory negligence. The difference in the age makes the difference in the two cases. It is left in doubt whether the court regarded that difference as presenting a legal question or a question of fact. If, as the defendant contends, the judge decided it as a legal question, we think he made a mistake. But perhaps the better construction is that the court treated the tender age simply as evidence. If so, and the court weighed the fact with the other evidence and found due care, we cannot disturb the judgment on that ground.

The conclusion of the court is, that the court below erred in holding that any legal duty rested upon the defendant which was omitted, and did not err in holding that Daniel was guilty of contributory negligence. Consequently the judgment in the case of Daniel is affirmed, and in the case of William is reversed.

In this opinion the other judges concurred; except BEARDSLEY, J., who dissented in the case of William Nolan, on the ground that upon the finding the question of negligence was simply one of fact, which was properly disposed of by the court below.

[*Note.*—Judge PARDEE being disqualified by interest, Judge BEARDSLEY of the Superior Court sat in his place.]