LAWRENCE MOCARSKI, ADMINISTRATOR (ESTATE OF LAWRENCE MOCARSKI, JR.) *v.* HOWARD S. PALMER ET AL., TRUSTEES OF THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 3—decided July 18, 1945.

*Edwin H. Hall,* with whom was *Thomas J. O'Sullivan,* for the appellants (defendants).

*Leo Nevas,* with whom was *Harold Cable,* for the appellee (plaintiff).

BROWN, J.  The plaintiff brought this action to recover damages for the death of his son, caused by a locomotive of the New York, New Haven and Hartford Railroad Company, represented by the defendant trustees.  The plaintiff had a verdict and the defendants have appealed from the denial of the motion to set it aside and from the judgment.  The jury could reasonably have found these facts: The accident occurred at a point on the railroad's main line a short distance west of its Stamford station at about 3 o'clock in the afternoon of September 14, 1943.  At this place, there are four parallel tracks which extend in a general easterly and westerly direction and are numbered 3, 1, 2 and 4 from north to south.  Just north of these are a repair shop of the railroad and an asphalt plant.  A well-worn path leads northerly from Greenwich Avenue across vacant land to the railroad's right of way.  This path had been used considerably by persons going back and forth between the street and the asphalt plant and other places north of the tracks.  It had been used for a long time by pedestrians, including children who went over it very frequently in the afternoon.  There was no sign warning persons to keep off, either in connection with the path or the tracks.

About 2:15 o'clock on the afternoon in question, the plaintiff's son, who was ten years old, and two other boys of the same age, having come from school, pro-

ceeded from Greenwich Avenue up the path and across the tracks, at the place where others had daily crossed, to the asphalt plant to see it operate. One of its employees ordered them off and they started back toward the path by which they had come, but stopped before crossing the tracks to let a westbound express pass on track 3. Meantime an eastbound electric locomotive was approaching on track 2 at a speed of from thirty-five to forty-five miles per hour. Just after the rear end of the express had passed the boys, the fireman of the locomotive, who was seated on the left of the cab, saw them about nine hundred feet away, and the engineer, who was seated on the right of the cab, saw them upon reaching a point from eight hundred to six hundred feet away. When the fireman saw the boys, they were on the north side of track 3, and they progressed onto this track, which is where they were when the engineer saw them. After sighting the boys at the distance stated above, the fireman, though looking out ahead, did not see them again until the locomotive was within two hundred feet of them. It was his duty to warn the engineer of anything he saw on the tracks. He at no time did warn him that the boys were either near or upon the tracks. Under all of the circumstances, the engineer was charged with the knowledge that, when he saw the boys, as described above, they were apparently on their way across the tracks toward the path leading to Greenwich Avenue. Notwithstanding this, he did nothing to forestall injuring them except to sound a short blast of the whistle to warn them not to get onto track 2. Thereupon, he proceeded to direct his attention solely to the signal indicating whether the track ahead was clear and did not see the plaintiff's intestate again prior to the accident. The next time he saw any of the boys was when he saw one of them as they ran across, as hereafter related.

About the time the express was passing the boys, a man started to run toward them down the platform of the railroad's repair shop, waving his arms, gesticulating wildly and shouting. They were unable to hear what he said but assumed he was ordering them off the railroad property. They were frightened and started to run across the tracks toward the path on the south side by which they had come. The approaching locomotive was then between two hundred and three hundred feet away. The whistle of the locomotive was sounded. The first boy and the plaintiff's intestate, who was directly behind him, were then out on the tracks, running, the former between tracks 2 and 4. The first boy got across safely, the third boy, hearing the whistle, stopped in time to avoid being struck. As the plaintiff's intestate reached the space between the rails of track 2, he apparently heard the whistle, but the locomotive was practically upon him, and he ran diagonally across for a few feet, when he was struck and killed.

Just prior to the accident, observing a signal that the track was clear, the engineer increased the speed of the locomotive, and this was not diminished until after the locomotive had struck the plaintiff's intestate. The engineer did not know that the boy had been hit until told by the fireman after this had happened. There was nothing to indicate that the braking power of the brakes had been applied before the boy was struck. Had application of the locomotive's braking equipment for an emergency stop been made, it would have been instantaneously effective in beginning to reduce speed. This result was not produced by the use which the engineer claimed to have made of the so-called "dead-man's-control." Had there been no acceleration of speed after the engineer first saw the boys, or had the speed been reduced, as it could have been, by the

prompt use of the emergency braking equipment, the additional time so afforded the plaintiff's intestate would have enabled him to escape.

What we said of the defendants' negligence in the recent case of *Cote* v. *Palmer,* 127 Conn. 321, 325, 16 Atl. (2d) 595, is applicable here: "While the case for the plaintiff as regards the negligence of the defendants is not strong, we cannot hold that the jury could not reasonably have found for him upon this issue. The jury might have found that the long existence and general use of the pathways had resulted in a situation where the defendants were bound to exercise reasonable care toward persons using them; *Ulrich* v. *New York, N. H. & H. R. Co.,* 98 Conn. 567, 569, 119 Atl. 890; and that this use and the surrounding circumstances were such as to impose upon the operators of the train a duty to be watchful to avoid injury to persons they knew or should have known were upon or likely to come upon the track at that point. *Pomponio* v. *New York, N. H. & H. R. Co.,* 66 Conn. 528, 541, 34 Atl. 491; *Dyson* v. *New York & New England R. Co.,* 57 Conn. 9, 22, 17 Atl. 137. The defendants are charged with knowledge of those conditions which the operators of the train should, in the exercise of reasonable care, have observed. *Elliott* v. *New York, N. H. & H. R. Co.,* 83 Conn. 320, 324, 76 Atl. 298. The speed of the train could not reasonably have been held to be in itself negligent, but that would not necessarily free the defendants from the duty of reducing it so as to avoid the accident, in view of exceptional circumstances arising out of danger of injury which they knew or should have known. *Elliott* v. *New York, N. H. & H. R. Co.,* supra, 323." Under the peculiar circumstances, which well might have led a minor of the age of the plaintiff's intestate to attempt an escape across the tracks, we cannot hold that he was contribu-

torily negligent as a matter of law. *Sherman* v. *William M. Ryan & Sons, Inc.*, 128 Conn. 182, 184, 21 Atl. (2d) 378. The jury were entitled to consider the fright of the decedent as bearing on this question. *Farrell* v. *L. G. DeFelice & Son, Inc.*, 132 Conn. 81, 85, 42 Atl. (2d) 697. Upon the facts to which we have referred, the jury were warranted in concluding that the plaintiff's intestate was in the exercise of due care and that the engineer's negligence in failing to control the speed of the locomotive properly was the proximate cause of the accident. The motion to set aside the verdict was properly denied.

Upon the appeal from the judgment, we do not consider the errors assigned in the charge as given, since the defendants made no objection, as required by the rule. Practice Book, § 156. Only two of the defendants' request to charge, which the court refused to give, merit mention. One was that "there was no duty on the defendants to run the engine at a slower rate of speed at this place," and the other, that they "were not negligent because they ran the engine at a speed of 40 or 45 miles per hour." As the court correctly charged the jury, the evidence of the use of the path was "to be considered as bearing upon whether the defendant should reasonably have anticipated [the boys'] presence." The correct legal principles to which these requests relate and which are applicable to the situation are sufficiently set forth in the quotation from *Cote* v. *Palmer*, supra. In that case, as here, a specific traveled path commonly used in crossing the railroad's right of way was involved. In *Nolan* v. *New York, N. H. & H. R. Co.*, 53 Conn. 461, 472, 4 Atl. 106, the case relied upon by the defendants, the public had passed and repassed "on foot at pleasure and in all directions" (p. 469) over a considerable stretch of the defendant's right of way located between two parallel

streets in a thickly populated district. This difference in the facts distinguishes the *Nolan* case. The court did not err in refusing to charge as requested.

The plaintiff, having produced a witness who had lived for the four years preceding the accident in a house fifty feet from the path in question, was allowed over the defendants' objection to ask her a long series of questions as to the use which she had observed was made of this path during this period by both children and adults. The defendants objected because, first, the evidence was immaterial, and second, it was "outside of the complaint." What we have already said is a sufficient answer to the first ground of objection. No authority is cited and we know of none in support of the second. The complaint alleged that the decedent's death was caused by the defendants' negligence in operating their engine "over the tracks at a . . . rate of speed that was unreasonable, improper and excessive under the conditions prevailing at that time and place, in that the said employees did not have the said engine under reasonable control. . . ." The path and the use customarily made of it were comprehended within the allegation quoted concerning the "conditions prevailing." A timely motion by the defendants to compel the plaintiff to allege more specifically what these were might well have been granted. The defendants having failed to avail themselves of this course, their objection to the admission of the evidence at the trial was properly overruled.

There is no error.

In this opinion the other judges concurred.