RITA MARCHAND, ADMINISTRATRIX (ESTATE OF WILFRED MARCHAND) *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued June 2—decided July 7, 1959

*Thaddeus Maliszewski,* for the appellant (plaintiff).

*Thomas J. O'Sullivan,* with whom were *Thomas P. Hackett* and, on the brief, *Philip Baroff,* for the appellee (defendant).

MELLITZ, J. The plaintiff sued to recover damages for the death of her decedent, which she claimed was caused by the negligence of the defendant. She has appealed from a judgment rendered on a verdict in favor of the defendant, assigning error in the refusal of the court to set the verdict aside, in the charge to the jury, in a ruling on evidence, and in the allowance of an amendment during the course of the trial.

The jury could reasonably have found the following facts: The decedent was struck and killed by a train owned by the defendant and operated out of New Haven. The accident occurred on August 27, 1956, at a point 695 feet southerly of the Hamilton Street crossing in Hartford. A whistling post is located 634 feet south of the point of impact, or 1329 feet south of Hamilton Street. The day was bright and clear. The tracks in the area are straight and level. The train was sixteen minutes late and was traveling at sixty-two miles per hour. The decedent had been an employee of the Hartford Faience Co., which was located east of the railroad tracks and

south of Hamilton Street. He had been laid off the previous Friday and had returned on the Monday of his death to confer with his boss. He was last seen by fellow workers in the area of an entrance to to the plant known as the pugmill doorway. Eighty-eight and one-half feet south of this doorway is a makeshift bridge of railroad ties over a gully which runs along the east side of the tracks parallel to the Faience plant. The point of impact was seventy-eight feet north of this so-called bridge. People from the Faience plant could reach the tracks by means of the bridge. It had once consisted of boards but they were later replaced by ties. For many years, railroad employees and others had seen people crossing the tracks in this area. The permissible speed of trains there is seventy miles per hour. At a point south of the whistling post, the engineer of the train which struck the decedent started to blow the whistle, and when the train was about at the whistling post his eye was caught by an unidentified flash. After the train passed the whistling post, a form began to appear on the track. When the train was about 300 to 400 feet north of the whistling post, the engineer identified the form as that of a person. The decedent was walking slowly between the rails in a northerly direction, his back to the train. As the train approached, he turned partly to the left and at the same time gestured with both arms up-raised, and then pulled one hand and arm forward in a sweeping movement across the front of his body. When the decedent threw up his arms, the engineer put the train in full emergency. He applied the brakes about three and one-half seconds before striking the decedent. The latter remained between the rails, making no apparent attempt to save himself.

Errors assigned in the court's refusal to set aside the verdict and to incorporate in the finding several paragraphs dealing with facts which the plaintiff claimed to have proved require little discussion. There was ample evidence before the jury to support the verdict, and nothing to indicate prejudice on the part of the jury, partiality, corruption, confusion or lack of understanding of the issues. *Mims* v. *Kingsley*, 145 Conn. 7, 9, 138 A.2d 520. Since, upon the evidence, it cannot be said as a matter of law that the defendant was negligent or the decedent free from contributory negligence, the denial of the motion to set the verdict aside was proper. *Gennallo* v. *Mazzacane*, 144 Conn. 686, 689, 137 A.2d 534. The corrections sought in the finding relate to the application of the last clear chance doctrine and to the date the decedent was laid off from his employment. The finding in a case tried to the jury does not establish the facts but serves merely as a narrative of the facts which were claimed to have been proved and in the light of which errors claimed in the charge or rulings by the court may be tested. *Gennallo* v. *Mazzacane*, supra, 690. The court charged the jury fully on the last clear chance doctrine, and no error is assigned as to this portion of the charge. The changes sought in the finding would have no bearing on a consideration of the errors assigned. There was no error in the refusal to correct the finding.

The errors assigned in the charge are directed to the court's failure to charge in accordance with the plaintiff's request that in view of the long existence and use of the pathway over the gully the defendant was under a duty to exercise care and to reduce the speed of its trains to avoid injury to persons likely to come upon the tracks at that point, and to

the charge given on the status of the decedent and the speed of the train.

As to the defendant's duty in view of the existence and use of the makeshift bridge, the court charged the jury to "consider the evidence of the use of the makeshift bridge over the gully and the use of the tracks as bearing upon the defendant's duty reasonably to have anticipated the presence of persons such as [the decedent] upon [the] tracks at that point," and that "the defendant is charged with knowledge of those conditions of usage of the tracks by persons from the abutting properties which [the defendant's] employees should in the exercise of reasonable care have observed." The charge proceeded to explain constructive knowledge, that the defendant was charged with the knowledge it would have had, "had it exercised reasonable care in observing the conditions along its right of way, including persons on or crossing its tracks," and that the knowledge the defendant's employees obtained in the course of the performance of their duties was "in law the knowledge of the defendant." As bearing on the question of speed, the jury were instructed to consider whether the defendant should reasonably have anticipated the presence of persons on or near its right of way at that point and to consider all of the other circumstances, including the requirements of the practical operation of the railroad. The court continued as follows: "The law does not fix any set . . . speed, but the test is at what speed would a reasonably prudent engineer have operated this engine under all the circumstances, including those . . . mentioned, first of all, prior to the time when the decedent was seen. And that of course . . . involves consideration of whether or not in the exercise of reasonable care the engineer should have

anticipated the presence of persons at that point; and then if he should have, you would consider whether or not the rate of speed was unreasonable under the circumstances." The court defined a trespasser and a licensee and explained the defendant's duty with relation to each; that while the presence of a licensee might reasonably be required to be anticipated in a given situation and that of a trespasser not be required to be anticipated, the distinction was of little importance as the instant case was presented, and if the presence of the decedent had become known to the defendant, its duty to exercise care to avoid injury to him was the same whatever his status was found to be and whether or not his presence should reasonably have been anticipated; that the evidence of the use of the tracks at the point in question was to be considered as bearing upon whether the defendant should reasonably have anticipated the decedent's presence; that whether his status was that of a trespasser or that of a licensee, there was no duty on the defendant to run its trains at a slow speed at the place; and that the defendant was not negligent simply because the train was going at a speed of sixty-two miles an hour.

The plaintiff complains of the charge on the score that certain of the plaintiff's requests to charge were not given and that the court took from the jury the determination of speed and the failure to slow down as elements of negligence. It is clear that the court gave the essential substance of the plaintiff's requests. It was not required to employ their exact language. The jury could not have understood, from the charge as a whole, otherwise than that there was a duty on the defendant to exercise reasonable care to avoid injury to persons it knew or should have known were on or likely to come on the track

at the point in question and, if considering all of the circumstances disclosed by the evidence reasonable care required that course, to reduce the speed of the train accordingly. The charge correctly and fully set forth the applicable principles and rules required for the guidance of the jury. *Mocarski* v. *Palmer*, 132 Conn. 349, 353, 44 A.2d 64; *Cote* v. *Palmer*, 127 Conn. 321, 325, 16 A.2d 595.

The plaintiff assigns error also in the admission of evidence and in the allowance, during the trial, of an amendment to the answer setting forth that the decedent came to his death through his own voluntary acts. The evidence related to the decedent's conduct preceding the accident as bearing on the claim of the defense that the decedent placed himself in a position of peril voluntarily and deliberately. The evidence was admissible for the purpose offered. 1 Wigmore, Evidence (3d Ed.) §§ 143, 144. The allowance of the amendment setting up a special defense, while the trial was in progress, was within the discretion of the court. *Dadio* v. *Dadio*, 123 Conn. 88, 93, 192 A. 557. There is nothing in the finding to indicate that this discretion was abused.

There is no error.

In this opinion the other judges concurred.