## William G. Lemmon et al. v. The Paterson Construction Company, Inc.

Brown, C. J., Jennings, Baldwin, Inglis and O'Sullivan, Js.

Argued June 13—decided July 25, 1950

*Francis J. Moran,* with whom was *John E. McNerney,* for the appellant (defendant).

*Edward L. Reynolds,* with whom was *John J. Kinney, Jr.,* for the appellee (named plaintiff), and, on the brief, *Arthur B. O'Keefe, Jr.,* for the appellee (plaintiff H. B. Ives Company).

BROWN, C. J.  This is an action to recover for personal injuries sustained by the named plaintiff, hereinafter called the plaintiff, when he was struck by the movable portion of a fire escape alleged to have been negligently lowered by the defendant.  The court denied the defendant's motion for a directed verdict and the jury returned a verdict of $10,000 for the plaintiffs.  The court denied the defendant's motion to set it aside.  The defendant has appealed, and the errors assigned relate to the denial of its motions and to the court's charge to the jury.

It is undisputed that the jury could have reasonably found these facts:  On March 29, 1946, the plaintiff was employed as a factory carpenter by the Ives Company. It occupied a four-story brick building on Artizan Street in New Haven.  Attached to the rear of the building and extending from the fourth floor to the yard below was an iron fire escape with a platform at each floor.  An exit door opened on each of these platforms.  The fire escape between the fourth and second floors was firmly fixed and immovable.  A flight of three stationary steps led down from the platform at the second floor.  One end of a movable iron ladder or set of steps was so hinged to the bottom of this flight that the other end could be lowered to the ground. When not so lowered, this section was kept suspended twelve feet in the air in a horizontal position parallel to the wall of the building by means of a heavy counterweight.  To change the position of the section so that it would contact the ground, it was necessary, by the application of continuing pressure upon an iron bar

which constituted a part of the railing around the second-floor platform, to swing one end of the bar through a 90-degree arc toward the wall of the building to release a restraining catch or trigger. Contact with the ground ensued four seconds after the release of the catch. When the section was lowered, it extended past a first-floor rear door; the inside edge of the section was 3 feet 1 inch from the rear wall of the building and its lower end rested on the ground 2 feet 7 inches beyond the doorway. At the second floor, inside the doorway which opened onto the fire escape platform, was a sign reading, "For Emergency Use Only." Within the doorway was a room where women employees of the Ives Company worked. Use of the fire escape except in an emergency was forbidden by that company. A person standing on the platform of the fire escape at the second floor had an unobstructed view of the entire area in the rear of the building, including the first-floor doorway and the space underneath and on both sides of the fire escape.

The defendant had a contract with the Ives Company to remove a brick vault located on the second floor of the building at a point approximately eighty feet from the rear emergency exit, and eight to ten of the defendant's employees had been doing work on the premises for some three weeks prior to March 29. During that day and at all times throughout the three-week period, the defendant had kept its truck, equipment, material and tools in the rear of the building at a place in close proximity to the fire escape. There were three possible routes to be taken by a person desiring to go from the second floor of the building to the rear yard: first, the stairs leading from the second to the first floor and thence through the office and other rooms to a rear door; second, an elevator in the building; third, the fire escape. The most direct and quickest

route from the second floor to the rear yard was by way of the fire escape.

On March 29, about 11:30 a. m., during the working hours of the employees of both the Ives Company and the defendant, the plaintiff, with a helper named Talmadge, was engaged in carrying a piece of steel mesh eight feet long and four feet wide through the first-floor rear doorway. Inasmuch as the piece was wider than the door entrance, it was necessary for the plaintiff and Talmadge to maneuver and use some force to get it through the opening. This took about two minutes. During this time the plaintiff was outside the rear door and in full view. While he was so engaged and without any warning to him, the movable section of the fire escape tilted downward and struck him on the head, knocking him to the ground and causing the serious injuries complained of. Talmadge saw this happen. He immediately looked up and saw Lowell looking down at him and standing alone on the nearer end of the second-floor platform within reach of the bar described above. Lowell was attired in his working clothes. He was an employee of the defendant and had been on the job during the period it was carrying on the work.

In order to charge the defendant with liability, it was essential for the jury to find, further, that, although Lowell saw or in the exercise of reasonable care should have seen the plaintiff standing where the fire escape would strike him if it was lowered, he proceeded, without warning, to push the lever bar over and thus caused the fire escape to go down and strike the plaintiff; that this constituted the negligence which inflicted the plaintiff's injuries; and that in doing what he did Lowell was the agent of the defendant acting within the scope of his employment. The defendant contends that the jury were unwarranted in so finding and that there-

fore the court erred in refusing to set aside the verdict. This presents the principal question for determination upon this appeal. The defendant rested its case without offering any evidence. Lowell was in court during the course of the trial and was pointed out in the presence of the jury as being the man who was on the fire escape when the plaintiff received his injuries. Lowell was not called as a witness by either party. There was no direct testimony that he lowered the fire escape or that he was engaged within the scope of his employment at the time.

The verdict can only be sustained if the jury were warranted in finding, first, that Lowell operated the bar lever which caused the fire escape to come down and strike the plaintiff; second, that in so doing he was negligent; and third, that when he committed this negligent act he was the agent of the defendant acting within the scope of his employment. In the absence of direct evidence, the jury, while they "cannot base their conclusions upon guess or speculation, . . . are entitled to draw reasonable inferences and their verdict must stand if the evidence is such as to justify in their minds 'a reasonable belief of the probability of the existence of the material facts.' *Esserman* v. *Madden,* 123 Conn. 386, 388, 195 Atl. 739." *White* v. *Herbst,* 128 Conn. 659, 661, 25 A. 2d 68. Each of the first and third findings depends upon an inference. Its validity is to be determined by this test as applied to the facts recited above, which the jury could reasonably have found.

The inference that Lowell operated the lever which caused the fire escape to go down was clearly warranted. By reason of the fact that the catch could be released only if someone applied continuing pressure to move the lever through a 90-degree arc, that Lowell was standing where it was possible for him to have

so operated the lever at the time of the accident, and that there was no one else who could have done so, the jury could hardly have failed to find that he did operate it as claimed by the plaintiff. The same is true of their second finding, that Lowell's commission of this act constituted negligence. The facts show that had Lowell exercised reasonable care he would have observed the plaintiff on the ground below and realized that, inasmuch as he had given him no warning, he could not lower the fire escape without injuring him. The inference that Lowell was the defendant's agent, acting within the scope of his employment at the time, was also justified. *Rappaport* v. *Rosen Film Delivery System, Inc.*, 127 Conn. 524, 526, 18 A. 2d 362. The jury could reasonably and logically have inferred that, incident to the work being carried on by the defendant on the second floor of the building, Lowell, as one of its employees, having occasion, during working hours and while dressed for his work, to get some equipment or material from the rear yard where the defendant kept it, was proceeding by the fire escape as the shortest and easiest way to accomplish his purpose and that he lowered the fire escape in pursuance thereof. That the jury may have based an inference upon an inference in reaching one or more of the three findings does not militate against the conclusion that they were warranted. *Ruerat* v. *Stevens*, 113 Conn. 333, 338, 155 A. 219. Furthermore, as the findings sufficed to make out a prima facie case in the essential particulars, the failure of the defendant to call Lowell as a witness served to fortify the plaintiff's case, since he was available and was the one whom the defendant would naturally produce. *State* v. *McDonough*, 129 Conn. 483, 487, 29 A. 2d 582; *Ross* v. *Koenig*, 129 Conn. 403, 408, 28 A. 2d 875; *Middletown Trust Co.* v. *Bregman*, 118 Conn. 651, 657, 174 A. 67; *Dunn* v. *Santamauro*, 119 Conn. 307, 309,

175 A. 913; *Cupo v. Royal Ins. Co.*, 101 Conn. 586, 592, 126 A. 844; *Ezzo v. Geremiah*, 107 Conn. 670, 677, 142 A. 461. The court did not err in refusing to set aside the verdict. The denial of a motion for a directed verdict is not a ground of error. *Lombardi v. Laudati*, 124 Conn. 569, 575, 200 A. 1019.

There were no requests to charge, and but two of the three objections by the defendant pursuant to § 156 of the Practice Book are discussed in its brief. The first is that the court failed to instruct the jury "that they should not take into consideration any loss of earnings." The defendant's objection, as stated to the court, was that it had charged, in effect, "I am not going to say anything about loss of earnings . . . in view of the fact that there is no claim of loss of earnings." The charge adequately covered the issue. The defendant further objected that, while "the charge was correct as to inferences on negligence," it was not "on inferences as applied to the question of agency." This criticism is not borne out by the charge when considered as a whole, as it must be. *State v. Murphy*, 124 Conn. 554, 566, 1 A. 2d 274. The court first instructed the jury sufficiently upon the subject of agency and then proceeded to give them the requisite explanation of the principles concerning inferences as applied to the agency issue, referring briefly to certain of the pertinent facts in this connection. The defendant's assignments of error in the charge are not sustained.

There is no error.

In this opinion the other judges concurred.