JAMES W. BARRETT, ADMINISTRATOR (ESTATE OF PATRICIA J. BARRETT) *v.* CENTRAL VERMONT RAILWAY, INC., ET AL.
(2375)

DANNEHY, C.P.J., HULL and BORDEN, Js.

Argued April 12—decision released September 11, 1984

*Edmund W. O'Brien,* for the appellants (defendants).

*Dale P. Faulkner,* with whom were *Thomas W. Boyce* and *Thomas B. Wilson,* for the appellee (plaintiff).

BORDEN, J. The plaintiff administrator of the estate of the decedent, Patricia J. Barrett, brought this action against the defendant railway company and the defendant engineer of one of its freight trains to recover damages for the wrongful death of the decedent resulting from a collision between the defendants' train and the decedent's automobile at a railroad crossing. After a jury trial, a verdict was returned for the plaintiff. This appeal[1] followed the denial by the trial court of the defendants' motion to set aside the verdict and motion for judgment notwithstanding the verdict.

The jury could have reasonably found the following facts. On March 2, 1977, at approximately 4:30 p.m., the decedent was driving her automobile in a westerly direction on a public highway in the town of Franklin known as Murphy's Crossing Road, a secondary road between state highway route 32 and route 87. Murphy's Crossing Road crosses the defendant's track and is about sixteen feet wide at the crossing. The train, which consisted of two engines, six boxcars, three hopper cars

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

and a caboose, was preceeding south. The decedent's view of the north, the direction from which the train was coming, was obstructed by a hill. The day was clear, and the sun was bright and low on the horizon. Anyone traveling west on Murphy's Crossing Road at that time of that day would be driving directly into the sun, which almost completely obliterated the visibility of the only warning device, a railroad sign with flashing lights located at the crossing. There was no bell on this sign and the train was not equipped with a rotating flashing strobe light at the time of the accident. There were no pavement markings on the road to warn of the crossing.

The engineer of the train was sitting on the right hand side of the train and did not see the decedent's automobile as it approached from his left. The fireman was seated on the left hand side of the train. When he saw the decedent's automobile he yelled to stop the train, and the engineer applied the emergency brake. The engineer felt the impact of the train hitting the automobile but he did not see the automobile or know, at the time, what he had hit. As a result of the impact the decedent sustained a compound fracture of the skull with a laceration of the brain which caused her death within minutes.

The defendants first argue that the court erred in failing to grant their postverdict motions.[2] The trial court's ruling on a motion to set aside a verdict is entitled to great weight; *Nielson* v. *D'Angelo*, 1 Conn. App. 239, 244, 471 A.2d 965 (1984); and our review of its refusal to set aside a jury verdict is limited; *Kalleher* v. *Orr*, 183 Conn. 125, 126, 438 A.2d 843 (1981); because "[t]he trial judge can sense the atmosphere of a trial and has an excellent vantage point for evaluat-

---

[2] As grounds for the motion to set aside the verdict and motion for judgment notwithstanding the verdict, the defendants alleged that the verdict was contrary to the law, against the evidence and excessive.

ing the factors that may have brought the jury to its verdict." *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 3, 444 A.2d 211 (1982).

The defendants claim in effect that there was no evidence to prove any of the specifications of negligence alleged in the complaint or to prove that any of their acts or omissions was the proximate cause of the decedent's death. We disagree.

It is axiomatic that to recover in negligence for a wrongful death the plaintiff must establish a causal connection between the decedent's death and the defendants' breach of a duty of care; see id., 4; *Angier* v. *Barton,* 160 Conn. 204, 209, 276 A.2d 782 (1970); and that breach of such duty was the proximate cause of the decedent's death. *Hearl* v. *Waterbury YMCA,* supra, 4. The test for proximate cause is whether the defendants' conduct was a substantial factor in bringing about the decedent's death. Id.

The defendants owed a duty of using reasonable care to avoid injury to those using the crossing. *Ulrich* v. *New York, N.H. & H. R. Co.,* 98 Conn. 567, 568–69, 119 A. 890 (1923). The amount of care required must be "proportionate to the danger to be reasonably anticipated" and be "reasonably adequate under the circumstances to prevent injury" to those rightfully using the crossing. *Pomponio* v. *New York, N.H. & H. R. Co.,* 66 Conn. 528, 541, 34 A. 491 (1895); *Ulrich* v. *New York, N.H. & H. R. Co.,* supra, 569.

The question of whether the defendants were negligent depends upon many facts. Among those specifications of negligence which the jury could have used to reach its conclusion was the unreasonableness of the defendants' speed at the crossing. Id. This specification presents a classic question of fact for the jury. Id.

The railway company had itself set a speed limit of twenty-five miles per hour at that particular crossing. There was evidence, based on a reenactment of the collision requested following the accident, by the investigating police officer, that the speed of the train was thirty miles per hour as it approached the crossing. There was also expert testimony that a reasonable train speed at that crossing should not have exceeded fifteen miles per hour; that the train was traveling at thirty-one miles per hour; and that this speed was the proximate cause of the decedent's death because her injuries would have been less had the train been going slower.

The defendants had a duty to exercise reasonable care to avoid injury to persons they knew or should have known were to come on the track and that duty included, considering all the circumstances, reducing the speed of the train accordingly. *Marchand* v. *New York, N.H. & H. R. Co.,* 146 Conn. 599, 603–605, 153 A.2d 438 (1959). Viewing the evidence in the light most favorable to sustaining the jury's verdict; *Puro* v. *Henry,* 188 Conn. 301, 311, 449 A.2d 176 (1982); we conclude that there was sufficient evidence for the jury to find that the train was traveling at an unreasonable speed, and that this negligence was the proximate cause of the decedent's death.

The plaintiff was only required to prove any one of his specifications of negligence. *Duley* v. *Plourde,* 170 Conn. 482, 485, 365 A.2d 1148 (1976); *Sacks* v. *Connecticut Co.,* 109 Conn. 221, 236–37, 146 A. 494 (1929). Since we conclude that he produced enough evidence to establish liability under the specification of unreasonable speed, we need not consider the defendants' argument that the plaintiff failed to establish his other specifications of negligence.

The defendants claim, in their next four assignments of error, that the court erred in its instructions to the

jury; in admitting into evidence a certain exhibit of the plaintiff; in permitting an amendment to the complaint; and in refusing to declare a mistrial. The plaintiff responds, first, that these claims are not properly before us because the defendants did not include them in their preliminary statement of issues[3] under Practice Book § 3012 (a).

Ordinarily, we are not inclined to review claims of error unless they are included in the appellant's preliminary statement of issues. See *Wadsworth* v. *Zahariades,* 1 Conn. App. 373, 375 n.4, 472 A.2d 29 (1984). The Supreme Court also appears to follow this general policy. See *Verrastro* v. *Sivertsen,* 188 Conn. 213, 218, 448 A.2d 1344 (1982); *Presutti* v. *Presutti,* 181 Conn. 622, 626, 436 A.2d 299 (1980). We are aware, however, that the Supreme Court has on occasion reviewed claims notwithstanding an appellant's failure to comply with Practice Book § 3012 (a). Those occasions appear to fall into two categories: (1) where the claim is of constitutional dimension or may involve plain error; see, e.g., *State* v. *Martin,* 189 Conn. 1, 2 n.1, 454 A.2d 256 (1983); *State* v. *Miller,* 186 Conn. 654, 657 n.2, 443 A.2d 906 (1982); or (2) where both parties briefed the claim, there was no indication of an objection by the appellee to review and it was in the interests of justice to consider the claim. See, e.g., *State* v. *Ouellette,* 190 Conn. 84, 101 n.13, 459 A.2d 1005 (1983); *State* v. *Cannon,* 185 Conn. 260, 265–66 n.9, 440 A.2d 927 (1981); *Scott* v. *General Iron & Welding Co.,* 171 Conn. 132, 139, 368 A.2d 111 (1976).

Here there are no constitutional issues involved,[4] none of the claims appears to rise to the level of plain

---

[3] The defendants' preliminary statement of issues is confined to claims of insufficiency of evidence of negligence and excessiveness of the verdict.

[4] We note that in *Wadsworth* v. *Zahariades,* 1 Conn. App. 373, 375 n.4, 472 A.2d 29 (1984), we declined to consider a constitutional claim which was not included in the preliminary statement of issues.

error or miscarriage of justice and the appellee urges compliance with the rule. Under the circumstances, we agree with the appellee and decline to consider these claims.[5]

Practice Book § 3012 (a) requires that the appellant submit "a preliminary statement of issues intended for presentation on appeal." The twin purposes of this requirement are to apprise the appellee, who has only thirty days from the filing of the appellants' brief to file his brief;[6] see Practice Book § 3060N; of the issues on appeal before receipt of the appellant's brief and to define for the record the parameters of those issues. *Larson* v. *Norkunas,* 37 Conn. Sup. 869, 870 n.1, 441 A.2d 205 (1982). Although the plaintiff has, after urging adherence to Practice Book § 3012 (a) in his brief, gone on to address the merits of the defendants' claims, he should not be penalized for his caution in doing so. He is entitled, as is this court, to insist on compliance with such a basic and useful rule of appellate practice.

Furthermore, the defendants filed their preliminary statement of issues approximately three weeks after the ruling on their motion. This suggests to us that the

---

[5] The only one of the four claims which the interests of justice might suggest for consideration is the defendants' claim with respect to the court's charge to the jury. The defendants argue that the court erred in its instructions to the jury in that it permitted the jury to find the defendants negligent under the plaintiff's general specification that the defendants "failed to exercise reasonable care under all the circumstances." The defendants contend that under such an instruction, the jury could consider acts of negligence other than those specified in the complaint. Our review of the charge to the jury discloses that the court only mentioned this general allegation of negligence once, when it read the complaint to the jury. Moreover, the court did not mention it when it later explained the specific acts of negligence alleged by the plaintiff. We are unable to see what elements of negligence this general allegation could refer to, other than those specified in the complaint, nor have the defendants called our attention to any. Under the circumstances, if there was any error in the charge, it was harmless. See *Buonanno* v. *Cameron,* 131 Conn. 513, 516, 41 A.2d 107 (1945).

[6] In contrast, the appellant has forty-five days from delivery of the transcript to file his brief. Practice Book § 3060N.

issues presented to the trial court on their post verdict motions were those claimed in their preliminary statement of issues; see footnote 3, supra; rather than those claimed on appeal, and we are unable to find anything in this record contrary to this suggestion. Thus, the trial court may well have been deprived of "a full opportunity to redress any errors which may have occurred at trial before the appellate process [was] begun"; *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 515, 441 A.2d 63 (1981); and we may have been deprived of a ruling on those claims by the trial court, made after the heat of trial dissipated, which could have been "helpful to the appellate court, particularly with respect to evaluating the effect of [the] ruling[s] upon [the] verdict." Id. In any event, the defendants did not take the opportunity to define precisely what the issues were on appeal or to amend their preliminary statement of issues, which they could have done as a matter of right before their brief was filed or by permission of this court after their brief was filed. Practice book § 3012 (d); *State* v. *Cannon,* supra.

There is no error.

In this opinion the other judges concurred.