VIRGINIA M. PATRICK v. J. WILLIAM BURNS,
COMMISSIONER OF TRANSPORTATION

HOWARD W. RATEGAN v. VIRGINIA M. PATRICK ET AL.

JEANNE M. DELEHANTY ET AL., ADMINISTRATRICES
(ESTATE OF KATHLEEN ANDERSON) v.
VIRGINIA M. PATRICK ET AL.
(3113)
(3114)
(3115)

DUPONT, C. J., HULL and BORDEN, Js.

Argued October 3—decision released December 24, 1985

*John W. Sitarz,* with whom, on the briefs, were *Louis B. Blumenfeld* and *Ellen M. Burns,* for the appellant (defendant commissioner of transportation).

*Jerome J. Sanchy, John D. Bagdasarian* and *Kate W. Haakonsen,* with whom, on the briefs, was *Eugene A. Marconi,* for the appellees (plaintiffs).

BORDEN, J. These three combined appeals arise out of a two car collision which occurred at approximately 9 p.m. on January 17, 1982, on Route 318 in Barkhamsted. The plaintiff in each of the first two cases, Virginia M. Patrick and Howard W. Rategan, was the operator of one of the two cars, and the plaintiffs in the third case, Jeanne M. Delehanty and Carol Annacherico, are the administratrices of the estate of Kathleen Anderson, a passenger in the Rategan car who died as a result of the accident. The plaintiffs sued the defendant,[1] the commissioner of transportation, pursuant to General Statutes § 13a-144 claiming that a large accumulation of ice on the highway was the sole

---

[1] In *Rategan* v. *Patrick* (3114), the complaint stated claims against Virginia Patrick and against John Patrick, the owner of the vehicle involved in the accident, in addition to claims against the commissioner of transportation. In *Delehanty* v. *Patrick* (3115), the Patricks and Howard Rategan were named as defendants in addition to the commissioner. Prior to trial, all claims except those against the commissioner were withdrawn. As used in this opinion, "the defendant" describes the commissioner only. The other parties are referred to in their capacities as plaintiffs.

proximate cause of their injuries. See *D'Arcy* v. *Shugrue,* 5 Conn. App. 12, 14, 496 A.2d 967, cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985).

The trial court denied the defendant's motions for directed verdicts. The jury returned verdicts for the plaintiffs. The court denied the defendant's motions, filed pursuant to Practice Book §§ 320 and 321, to set aside the verdict and for judgment in accordance with the earlier motions for directed verdicts, and rendered judgments for the plaintiffs. The defendant appeals. His principal claim of error is that the evidence on the issue of causation was insufficient. He also raises a claim of error on the jury charge, and four other claims involving evidentiary rulings and the denial of his motion for mistrial. We find no error.

I

### SUFFICIENCY OF EVIDENCE OF CAUSATION

It was undisputed that the Patrick vehicle crossed over the center line of the highway and collided with the Rategan vehicle. The plaintiffs' claim was that the ice caused the Patrick vehicle to lose control and cross over the center line. The defendant challenges the sufficiency of the evidence on this issue of causation.

The trial court filed a concise but thoughtful memorandum of decision on the defendant's motions to set aside the verdicts. With respect to this issue, it determined that "the issue of proximate cause was one of fact which the jury was justified in reaching against the defendant. . . . While the question was open to reasonable disagreement, it cannot be said as a matter of law that 'reasoning minds could not reasonably have reached' the conclusion of the jury. [*Tomczuck* v. *Alvarez,* 184 Conn. 182, 185, 439 A.2d 935 (1981)]. There was evidence of lack of speed on the part of . . . Patrick, her suddenly coming upon a substantial patch

of ice without warning and that the area was considerably rutted. . . . Patrick had operated her car a long distance from Massachusetts without incident until she hit the ice. Under the circumstances, the jury was justified in reaching the issue of sole proximate cause in favor of the plaintiffs. There is no more justification for the court to set aside the verdict in favor of the plaintiffs than would have been the case if the jury had found for the defendant." This ruling, of course, is entitled to great weight because of the trial court's familiarity with the facts of the case and because of the trial court's excellent vantage point for evaluating the factors influencing the jury. *D'Arcy* v. *Shugrue,* supra, 15; *Barrett* v. *Central Vermont Railway, Inc.,* 2 Conn. App. 530, 532–33, 480 A.2d 589 (1984). Our limited review of a claim of evidentiary insufficiency is confined to viewing the evidence most favorable to sustaining the verdict. *D'Arcy* v. *Shugrue,* supra. The verdict must stand if the jury could reasonably have reached the conclusion it did reach, on the basis of that evidence. *Balboni* v. *Stonick,* 2 Conn. App. 523, 526, 481 A.2d 82 (1984).

We note that, although the issue of whether the highway was defective was contested at trial, the defendant does not contest on appeal the sufficiency of that evidence. Nor does he claim that the evidence was such that the jury was compelled to conclude that either Patrick or Rategan was negligent so as to relieve him of his statutory liability. Cf. *D'Arcy* v. *Shugrue,* supra. His sole claim here is that the evidence was insufficient to justify a finding that the defect was the sole proximate cause of the collision.

The evidence supporting the verdict on that issue is as follows: In the area of the accident, Route 318 is a secondary highway running easterly and westerly, with a posted speed limit of forty miles per hour and without artificial light. At the area in question, the high-

way runs steeply downhill in a westerly direction, reaches the bottom of the hill and then runs uphill. At the time of the accident, a thick, rutted ice floe approximately 141 feet long and 14 feet wide covered the entire westbound lane about two-thirds of the way down the hill. This ice floe was not readily visible at night, and had caused other westbound drivers either to swing around it or to proceed very slowly over it in order to avoid sliding over the center line. The varying thickness of the ice created a reverse crown sloping toward the center of the road, which would tend to direct a westbound car traveling downhill into the eastbound lane. The ruts had caused some jarring to another westbound vehicle as it drove over the ice floe.

Before the accident, Patrick, who had been driving about one hour and twenty minutes without incident, was traveling westbound at about forty miles per hour, and Rategan was traveling eastbound at about the same speed. Patrick could recall only starting to go down the hill, applying her brakes a little bit to slow down, continuing to apply her brakes as she descended the hill, and seeing headlights. She next recalls someone opening the door of her car to remove her from it. Her speed of forty miles per hour is equivalent to 58.7 feet per second. Rategan testified that he had started up the hill, traveling easterly, that he saw headlights come across at him, that he swung to the right and that the collision occurred. He next recalled awakening at the hospital. The point of impact of the two vehicles was in the eastbound lane, 105 feet west of the westerly edge of the ice floe. That is, the westbound Patrick vehicle collided with the eastbound Rategan vehicle 105 feet beyond the end of the ice floe.

The issue posed by the defendant's claim of evidentiary insufficiency is whether the jury's implicit factual finding that the ice floe caused the collision falls within the sphere of those cases upholding such factual infer-

ences based on admittedly meager circumstantial evidence; see, e.g., *Blados* v. *Blados,* 151 Conn. 391, 198 A.2d 213 (1964); *White* v. *Herbst,* 128 Conn. 659, 25 A.2d 68 (1942); *Meyer* v. *Barnes,* 2 Conn. App. 485, 488, 479 A.2d 1236 (1984); *Yeske* v. *Avon Old Farms School, Inc.,* 1 Conn. App. 195, 200–201, 470 A.2d 705 (1984); or those cases precluding such a finding as based on speculation or conjecture. See, e.g., *Toomey* v. *Danaher,* 161 Conn. 204, 286 A.2d 293 (1971); *Chasse* v. *Albert,* 147 Conn. 680, 166 A.2d 148 (1960); *Palmieri* v. *Macero,* 146 Conn. 705, 155 A.2d 750 (1959); *Latham* v. *Hankey,* 117 Conn. 5, 166 A.2d 400 (1933). Although this is a close case, we conclude that the jury could have reasonably concluded from the circumstantial evidence that Patrick's loss of control of her vehicle, her crossing over the center line and, thus, her colliding with Rategan's vehicle was caused solely by the ice floe, and that the loss of control was sufficiently severe to carry her vehicle forward 105 feet to the point of collision.

There is a significant difference between the cases on which the defendant relies; *Toomey* v. *Danaher,* supra; *Chasse* v. *Albert,* supra; *Palmieri* v. *Macero,* supra; *Latham* v. *Hankey,* supra; and this case. In those cases, all of which involved loss of control of motor vehicles, there was no evidence of a defect in the highway or other factor which could have caused the loss of control. Thus, the factfinder was left to speculate about the myriad causes of loss of control of a motor vehicle. In this case, however, there was evidence of a highway defect which the jury could have found to be the cause of Patrick's loss of control.

The defendant's argument to the contrary rests essentially on three bases, two of which derive from the 105 foot distance between the point of impact and the westerly edge of the ice floe. Those two bases are Rategan's testimony regarding the point at which the Patrick vehicle crossed the center line, and the testi-

mony of the defendant's expert on accident reconstruction regarding the same factual issue. The third basis is the likelihood that the accident was caused by other factors, such as the worn tread on Patrick's front tires and the severe misalignment of those tires, of which there was evidence, or by other causes such as Patrick temporarily blacking out, falling asleep or swerving to avoid a darting animal, of which there was no evidence.

There was evidence that the Patrick vehicle was traveling downhill at 58.7 feet per second and traversed a distance of 105 feet after leaving the ice floe. Thus, it would have taken the Patrick vehicle less than two seconds from leaving the ice to the point of impact. Rategan testified that the Patrick vehicle was about fifty feet from his vehicle when it crossed the center line, and that it was only an instant from that time to the collision. According to the defendant, this evidence requires the inference that the Patrick vehicle crossed the center line about fifty-five feet beyond the ice floe. Rategan also testified, however, that his estimate of distance was only a guess and that he could not be sure of it. The jurors were not required to accept Rategan's estimates of time and distance. They could reasonably have inferred that those estimates under these circumstances were erroneously low, and that the Patrick vehicle crossed the center line closer to the ice floe than Rategan's uncertain approximation suggested.

Similarly, the defendant's expert witness gave his opinion that the Patrick vehicle crossed over the center line seventy to eighty feet beyond the ice floe. With respect to the defendant's reliance on this testimony, it is axiomatic that the jury is not obliged to credit such opinions. *Nielson* v. *D'Angelo,* 1 Conn. App. 239, 247, 471 A.2d 965, cert. dismissed, 193 Conn. 801, 474 A.2d 1259 (1984).

With respect to the other possible causes of the cross-over by Patrick, it is sufficient to note that "[p]roof of

a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief" that the material fact is more probable than not. *Blados* v. *Blados,* supra, 395.

## II

### JURY CHARGE ON DEFENDANT'S STATUTORY DUTY

The defendant claims that the trial court committed reversible error by failing to charge the jury in accordance with his request to charge on his statutory duty, insofar as that duty concerns ice on the highway. The gist of the request to charge was that "[t]he mere fact that there is ice on the surface of the highway does not of itself render the highway defective."[2]

There is no question that the defendant's request was a correct legal statement and was appropriate to the facts of the case. "The mere fact that ice exists upon a highway does not of itself render the highway defective. Whether or not the highway is rendered defective by the existence of ice or snow thereon depends upon a variety of conditions and circumstances, including the difficulties attending situations as they are created by the rigors of our winters." *Pape* v. *Cox,* 129 Conn. 256, 260, 28 A.2d 10 (1942); see also *Baker* v. *Ives,* 162 Conn. 295, 300, 294 A.2d 290 (1972) (highway can be defective by reason of ice depending on circumstances and conditions).

---

[2] The pertinent request to charge was as follows: "In the eyes of the law, a highway is defective as the result of ice on it when it is not reasonably safe for public travel. The mere fact that there is ice on the surface of the highway does not of itself render the highway defective. Ice is a defect only when its presence on the highway creates a condition which is not reasonably safe for public travel. The law does not require that a highway be kept perfectly or absolutely safe for public use. In other words, ice on the surface of a highway is not a defect even though the highway because of it is not perfectly and absolutely safe, provided it can be said that the highway is reasonably safe for public travel."

This does not end our inquiry, however. The fact that the trial court has failed to grant a proper request to charge does not necessarily mean that it has committed reversible error. *Barrett* v. *Central Vermont Railway, Inc.,* 2 Conn. App. 530, 536 n.5., 480 A.2d 589 (1984). We have "often and recently reiterated the 'familiar principle' that jury instructions need not be exhaustive or perfect so long as they, considered in their entirety, are legally correct, adapted to the issues, sufficiently clear for the jury's guidance and fairly present the case to the jury without injustice to either party." (Citations omitted.) *Nielson* v. *D'Angelo,* supra, 244; *State* v. *Heinz,* 1 Conn. App. 540, 549, 473 A.2d 1242, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984).

Here, the trial court, while not using the precise language requested by the defendant; see *State* v. *McKnight,* 191 Conn. 564, 582–84, 469 A.2d 397 (1983); did instruct the jury in accordance with its substance. It instructed the jury essentially that the issue was whether the ice floe created a dangerous condition and whether the defendant took proper steps to make it reasonably safe for travel. It instructed the jury that a highway is defective when it is not reasonably safe for public travel, that is, when its condition is such that it is likely to cause injury to travelers. It emphasized that the defendant was not an insurer of the safety of travelers, that the defendant was not bound to maintain the highway in an absolutely safe condition and that he had met his duty if the highway was reasonably safe. It went on to point out that, even if the jury found the highway not to be reasonably safe, that would not necessarily be sufficient to hold the defendant liable. The court instructed the jury that the test of the defendant's duty was whether he used reasonable care to make it safe, considering the nature and size of the task of the defendant to maintain all the state highways and the methods used by him to perform that

duty. Under these circumstances, we conclude that the court's instructions, considered as a whole, were "legally correct, adapted to the issues, sufficiently clear for the jury's guidance and fairly present[ed] the case to the jury without injustice to either party." *Nielson* v. *D'Angelo,* supra, 244.

The defendant claims that the court's failure to charge in accordance with his request was particularly grievous because, he asserts, the court had assured him in a precharge chambers conference that it would do so and, relying on that assurance, he emphasized the point in his final argument to the jury. The plaintiffs dispute that such an assurance was given, and the defendant conceded at oral argument in this court that there is no record of such an assurance. Under these circumstances, therefore, we have no occasion to consider whether such an assurance could be the basis for reversible error.

## III

### DENIAL OF MOTION FOR MISTRIAL

We next consider the defendant's claim that the court erred in denying his motion for mistrial. The basis of the motion was that inadmissible material was indirectly placed before the jury by three objectionable questions asked by counsel for Rategan, to which the court sustained the defendant's objections. The defendant's argument is without merit.

The defendant had filed a motion in limine, requesting the court, in advance of the trial, to exclude several items of evidence, including any "questions, answers, statements, remarks [or] evidence" calling for or referring to "opinions or conclusions by any of the police officers . . . as to the cause of the accident and/or the compliance with or breach of a legal duty by any of the parties . . . . " The court denied this

part of the motion in limine without prejudice, postponing the determination of the issues it posed in the attempt to introduce such evidence at the trial.

During the trial, the plaintiffs sought to elicit on direct examination of the officer who investigated the accident answers to the following questions: Whether he "discover[ed] any evidence or any indication that . . . Rategan did anything which contributed to this accident having taken place?"; and whether he found "anything linking . . . Rategan to the cause of this accident?" On redirect examination, the plaintiffs sought to elicit from the officer his opinion "as to what if anything . . . Rategan may have done to cause this accident?" The court sustained the defendant's objection to each question. After the third question the defendant moved for a mistrial, which the court denied.

We need not decide on this record whether our civil motion practice includes a motion in limine, which is not specifically mentioned in the Practice Book, although we note that the Supreme Court has implicitly approved its use in criminal cases. See, e.g., *State* v. *Braswell,* 194 Conn. 297, 306, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985); *State* v. *Binet,* 192 Conn. 618, 621–24, 473 A.2d 1200 (1984). The defendant's claim of error is not directed so much at the denial of his motion in limine as it is directed to the denial of his motion for a mistrial after the denial of his motion in limine.

In a civil case a mistrial is only warranted if, as a result of some occurrence, "it is apparent to the court that . . . a party cannot have a fair trial and the whole proceedings are vitiated." *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433 (1947); see also *Bansak* v. *Pawelczyk,* 173 Conn. 520, 522, 378 A.2d 569 (1977). Compare the substantial equivalent in the criminal context. Practice Book §§ 887, 888; *State* v. *Jennings,*

5 Conn. App. 500, 500 A.2d 571 (1985). Whether to declare a mistrial is within the court's "wide discretion." *Ferino* v. *Palmer,* supra. The evidence in this case took six days to present and consumed more than one thousand pages of transcript. We can hardly find an abuse of discretion in the court's refusal to declare a mistrial solely because three objectionable questions were asked.

## IV

### EVIDENTIARY RULINGS

The defendant claims that the court erred in a series of four evidentiary rulings because it refused his request to be apprised of the basis of the general objections interposed and of the basis of the court's rulings, and because the rulings were erroneous. We disagree.

Three of the rulings can be briefly disposed of. On three separate occasions, the plaintiffs objected to a question asked by the defendant. The objections were general, and did not state their bases. The court sustained the objections. The defendant on one occasion asked for the basis of the objection, on one occasion asked for the basis of the ruling, and on one occasion asked for the basis of both the objection and the ruling. None of these bases was forthcoming. The defendant duly excepted each time, but at no time did he state the ground of his claim of admissibility. " 'Since the defendant failed to state the ground of his claim of admissibility, the ruling cannot be held to be reversible error.' " *State* v. *De Santis,* 178 Conn. 534, 540, 423 A.2d 149 (1979); *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153 (1960); see Practice Book § 288. The court has no obligation to explain to counsel the basis for its evidentiary rulings, and counsel cannot create that obligation by requesting such an explanation. Nor is there any suggestion in this record that the court

precluded the defendant from stating the ground for his claim of admissibility. Cf. *State* v. *Corley,* 177 Conn. 243, 246, 413 A.2d 826 (1979).

Indeed, the defendant did properly preserve for appellate review the fourth evidentiary ruling by stating his claim of admissibility. This ruling involved the exclusion of a copy of a portion of Patrick's answers to Rategan's pretrial interrogatories. See footnote 1, supra.

Patrick had testified that she applied her brakes because she started down the hill, and that she did not recall applying her brakes more firmly as she approached the point of impact. She also testified that she did not recall seeing Rategan's vehicle, and that she did not recall decreasing her speed after seeing Rategan's headlights. On cross-examination the defendant sought to introduce the following written question by Rategan and answer by Patrick: "After having seen [Rategan], did [Patrick's] rate of speed increase or decrease? Answer: Decreased."

The defendant's claim of admissibility was confined to the ground that Patrick's response to the interrogatory was inconsistent with what he claimed to be her in-court testimony that she did not recall applying her brakes on seeing Rategan's vehicle.[3] In order for a statement to be introduced as a prior inconsistent statement, the court must be persuaded that, taking the testimony of the witness as a whole, the statements are indeed inconsistent, the inconsistency is substantial and relates to a material matter, and the statement yields

---

[3] We note that the defendant did not claim that Patrick's response was admissible on the general ground that an adverse party's out-of-court relevant admissions are admissible even if not inconsistent with her in-court testimony, as a general exception to the hearsay rule. See Tait & LaPlante, Connecticut Evidence (1984 Sup.) § 11.5. We thus confine our consideration of the ruling to the specific ground of admissibility claimed in the trial court. *State* v. *Sinclair,* 197 Conn. 574, 579, 500 A.2d 539 (1985).

more than a possible inference of inconsistency. *State v. Piskorski,* 177 Conn. 677, 710, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The court's determination of these factors involves its discretion, which we will not disturb in the absence of abuse. Id., 711.

It is true that the proferred evidence was inconsistent with the gist of Patrick's testimony that she did not recall decreasing her speed after seeing Rategan's headlights. This is so because she could only have decreased her speed on the steep downhill by applying her brakes more firmly, which she testified she did not recall doing.

We conclude, nonetheless, that the court did not abuse its discretion in this ruling. The defendant claimed that Patrick had testified that she did not recall applying her brakes on seeing Rategan's vehicle. Strictly speaking, she did not so testify. More significantly, taking Patrick's testimony in its entirety, both on direct and cross-examination, the court could have concluded that the inconsistency was not substantial. Such a discretionary judgment, made by the trial judge who had the opportunity to listen to that entire testimony, is one which we are loath to disturb in the absence of a clear showing of abuse. Thus, the court in this case was within its discretion in concluding that the written response of Patrick was "not sufficiently inconsistent so as to warrant [its] admission into evidence." Id.

We have fully considered the defendant's remaining two claims of error and find them to be without merit.

There is no error.

In this opinion the other judges concurred.