KENNETH J. MILANO *v.* THOMAS B. SAYERS ET AL.

WILLIAM J. DREW *v.* THOMAS B. SAYERS ET AL.
(3700)
(3701)

HULL, BIELUCH and PICKETT, Js.

Argued November 25, 1985—decision released March 18, 1986

*Eugene A. Cooney,* for the appellants (defendants in both cases).

*Anthony A. Tomaro,* for the appellee (plaintiff in the first case).

*Richard P. Weinstein,* for the appellee (plaintiff in the second case).

PICKETT, J. The defendants, Thomas B. Sayers and Janet Capasso, have appealed from the judgments rendered for the plaintiffs, Kenneth J. Milano and William J. Drew, on the verdicts entered following a jury trial in these consolidated dram shop cases.[1] The defendants are the owner and the permittee respectively of the

---

[1] General Statutes § 30-102 provides in pertinent part: "If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section."

Mardi Gras Cafe, formerly known as the Grandfather's Clock Cafe, located in Hartford.

On the evening of August 11, 1978, Richard Swanson, upon leaving the defendants' cafe, drove his car into a motorcycle occupied by the two plaintiffs, causing very serious injuries. The main issue at trial was whether Swanson was served alcohol at the defendants' cafe while he was intoxicated. Both Swanson and the barmaid, Joan Hall, denied that he was so served, although there was evidence that he was intoxicated when he left the cafe. It was conceded that Swanson and Hall had been close friends for a period of years.

Swanson testified that he was sober when he entered the bar. The barmaid testified that Swanson ordered a drink, but was served a soda instead because he appeared intoxicated. It was alleged that Swanson became irate and refused the soda. There was also testimony that Swanson was intoxicated at the time of the accident, only minutes after leaving the defendants' bar.

While charging the jury on the issue of inferences based upon disbelieved testimony,[2] the trial court made the following statement: "Our Supreme Court in *Novak* versus *Anderson* [178 Conn. 506, 423 A.2d 147 (1979)]

---

[2] The trial court gave the following charge during its instructions to the jury:

"Circumstantial evidence is perfectly good evidence that you may consider as well as direct evidence. You may draw inferences from such evidence, if such inferences are fairly presented by the evidence in the case. Not every fact can be proved by direct evidence or eyewitnesses and, so, therefore, facts must sometimes be proved by indirect evidence which we call circumstantial evidence. You're entitled to draw inferences if they are proper inferences from the evidence you have heard here under oath through the exhibits or through the testimony of witnesses, provided that you're not guessing or falling back upon surmise or conjecture. There must be a proper inference to be drawn from the evidence and not something outside of the courtroom.

"As I may have said before, the law is concerned with reasonable probabilities and not with mere possibilities."

once said this: while it is true that it is within the province of the jury to accept or reject a person's testimony, a jury in rejecting such testimony cannot conclude the opposite is true. A jury cannot from a disbelief of a person's testimony infer that the plaintiff's allegation is correct. In other words, you may disbelieve the testimony of any witness you want in whole or in part, but just disbelieving that witness' testimony does not mean necessarily that the opposite is true." The defendants alleged that this statement was contradictory and misleading and requested a clarification on the issue. The court refused to clarify further its instructions. The jury thereafter found for the plaintiffs. The defendants moved to set aside the verdict and for a judgment notwithstanding the verdict on the basis of the insufficiency of the evidence and the allegedly improper instruction. These motions were denied.[3]

The defendants claim on appeal that it was error to instruct the jury that if they disbelieved a witness' testimony, it "does not mean *necessarily* that the opposite is true."[4] (Emphasis added.) What the defendants seek to do is lift one word from the charge, the term "necessarily," to establish that the trial court committed error. This they cannot do. *Herb* v. *Kerr,* 190 Conn. 136, 138, 459 A.2d 521 (1983); *Foote* v. *Brown,* 81 Conn. 218, 226–27, 70 A. 699 (1908). " '[A] charge

---

[3] While the memorandum of decision denying the defendants' motion to set aside the verdicts and for judgment notwithstanding the verdict states that "[i]f the cases had been tried to the court, judgments would have been entered for the defendants," such a statement is irrelevant to this appeal.

[4] The defendants' attorney objected to the word "necessarily" in the jury instruction. He claimed that "[i]t implie[d] . . . that although the jury may not necessarily conclude the opposite is true, in fact, they might possibly conclude the opposite is true . . . ." He requested a clarification that "even if [the jury] disbelieve[s] the entire testimony of a witness, they are not at liberty to conclude on that basis that the opposite is true." We note that the court made a substantially identical instruction when it explained to the jury the import of *Novak* v. *Anderson,* 178 Conn. 506, 423 A.2d 147 (1979).

to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statements but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case; *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 [1933].' *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977). The charge should be examined to see whether it fairly presents the case to the jury so that no injustice is done under the rules of law to the legal rights of the defendant." *State* v. *Williams,* 182 Conn. 262, 268, 438 A.2d 80 (1980). An examination of the charge[5] discloses that it was "correct in law, adapted to the issues and sufficient for the guidance of the jury." *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94,

---

[5] The court charged the jury as follows: "So, there are really four elements to the case that must be proven, all of which must be proven. First of all, it must be proven by a fair preponderance of the evidence that a sale or service was made by the cafe or the bartender thereof, who is the agent of the defendants, to Mr. Swanson. That is a very crucial part of the case.

"If you find no sale or service to Swanson by that cafe or its agents then the case fails. Secondly, it must be a sale of alcoholic liquor and not Coca Cola or Ginger Ale, of course, as we heard about in this case. Clearly, it must be made to an intoxicated person. . . .

"So, the third requirement is that if they did sell or furnish liquor to Mr. Swanson, he must have been intoxicated at that time to impose liability upon them.

"Fourthly, they must prove that as a result of such intoxication, the plaintiffs must prove that Swanson thereafter caused the injuries to the plaintiffs, Messrs. Milano and Drew.

"So, those four requirements all of which must be satisfied are the crucial parts of the case. A sale or service to Swanson, he must have been drunk at the time, intoxicated at the time, there must have been alcoholic liquor, and as a consequence of that sale or service he must have gone out as a substantial factor of his intoxication causing injuries to Mr. Milano and Mr. Drew. *So, that is the liability phase of the case which must be proven by a fair preponderance of the evidence, that burden being on the plaintiff to so prove.*

"Now, if you find that any one of those elements are lacking, have not been proven, then you must stop right there and render a verdict, defendants' verdict in both cases. If you find that all four elements have been proven by a fair preponderance of the evidence, then you move on to discuss and assess damages." (Emphasis added.)

98 A.2d 664 (1953); *State* v. *Rodgers,* 198 Conn. 53, 56, 502 A.2d 360 (1985); *Patrick* v. *Burns,* 5 Conn. App. 663, 671, 502 A.2d 432 (1985). A microscopic examination of a charge is discountenanced by an appellate court. *State* v. *Mastropetre,* 175 Conn. 512, 524, 400 A.2d 276 (1978); *State* v. *Lopez,* 5 Conn. App. 599, 604, 502 A.2d 418 (1985).

The second claim of error is that the court's refusal to set aside the judgment and render a judgment notwithstanding the verdict was error because there was insufficient evidence to support the verdicts. The correctness of the trial court's action must be tested by the evidence most favorable to the plaintiffs. See *Tomczuk* v. *Alvarez,* 184 Conn. 182, 185, 439 A.2d 935 (1981); *Feir* v. *Hartford,* 141 Conn. 459, 463, 106 A.2d 723 (1954); *Patrick* v. *Burns,* supra, 665.

Viewing the testimony in this light, in support of the verdict as we must, the jury could reasonably have believed Swanson's testimony that he was not intoxicated when he entered the cafe. There was conflicting evidence as to when Swanson entered the cafe, but the jury could reasonably have believed that he entered as early as 9:30 p.m., in view of the testimony of Joan Hall that he entered anywhere between 9:30 and 10 p.m. Upon leaving the cafe, he got into his car and proceeded down Franklin Avenue. At approximately 10:22 p.m., while only a block or two from the cafe, his vehicle struck the plaintiffs. There was substantial evidence that Swanson was intoxicated at the scene of the accident.

The jury was entitled to draw reasonable inferences in support of its verdict. If they believed Swanson walked into the cafe at 9:30 p.m. and was not intoxicated and emerged at approximately 10:20 p.m. and was intoxicated, they could reasonably have inferred that he had been served alcohol in the defendants' bar

while he was intoxicated. The very nature of the Dram Shop Act is such that in many cases it is difficult to sustain the burden of proof by direct evidence. In most instances, the burden of proof is met by circumstantial evidence. *Pierce* v. *Albanese,* 144 Conn. 241, 256, 129 A.2d 606 (1957). As the court said in *Pierce:* "To say that the proof must show by direct evidence that [the intoxicated person] ordered the beer and paid for it is to insist upon a refinement which would make the statute practically inoperative under the circumstances." Id., 258; see *Staples* v. *Lucas,* 142 Conn. 452, 457, 115 A.2d 337 (1955). The court went on to state that "it is difficult to establish by direct or testimonial evidence, that is, by witnesses who state facts which came under their personal observation, precisely to whom the intoxicating beverage was sold and that the purchaser of it was already intoxicated when he bought it. See 1 Wigmore, Evidence (3d Ed.) p. 399. . . . Difficulty in securing testimonial evidence does not, however, excuse the necessity of proof sufficient to establish a case. It compels, rather, a resort to the establishment, by direct testimonial evidence, of circumstances from which logical and reasonable inferences of other material facts can be fairly drawn. In a civil case, 'proof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact.' *Dickson* v. *Yale University,* 141 Conn. 250, 253, 105 A.2d 463 [1954] . . . ." *Pierce* v. *Albanese,* supra, 255–56.

The jury is free to believe a part of what a witness testified and disregard other portions of his testimony. The jury was free to draw logical and reasonable inferences from the evidence. As long as rational minds could draw such inferences, the court cannot upset the

verdicts of the jury. *Lemmon* v. *Paterson Construction Co.,* 137 Conn. 158, 162, 75 A.2d 385 (1950); *Ropiak* v. *O'Leary,* 38 Conn. Sup. 597, 599–600, 456 A.2d 1215 (1982). There was evidence to support the conclusion that Swanson was intoxicated while at the cafe and evidence from which the jury could infer that he was served liquor.

In the case of *Balboni* v. *Stonick,* 2 Conn. App. 523, 481 A.2d 82 (1984), this court reversed the trial court's ruling setting aside a verdict and directed judgment for the defendant upon the verdict, stating that, "[i]t is the province of the jury to determine the credibility of the witnesses and the weight to be accorded their testimony. *Trzcinski* v. *Richey,* 190 Conn. 285, 298, 460 A.2d 1269 (1983). Accordingly, the evidence offered at trial must be given the most favorable construction to which it is reasonably entitled in support of the verdict. *Herb* v. *Kerr,* 190 Conn. 136, 140, 459 A.2d 521 (1983). While the ruling of the trial court on a motion to set aside a verdict is entitled to great weight because of the court's familiarity with the facts and circumstances of the case; *Nielson* v. *D'Angelo,* 1 Conn. App. 239, 244, 471 A.2d 965 (1984); the parties are entitled to have issues upon which fairminded persons may differ decided by the jury." *Balboni* v. *Stonick,* supra, 529–30; *Patrick* v. *Burns,* supra, 666.

There is no error.

In this opinion the other judges concurred.