MARLYN H. V. KELEHEAR, ADMINISTRATRIX (ESTATE OF DANIEL F. VARGAS) *v.* LARCON, INC., ET AL.
(8512)

DUPONT, C. J., DALY, and NORCOTT, Js.

Argued April 3—decision released July 17, 1990

*Daniel K. Lamont,* for the appellant (plaintiff).

*M. John Strafaci,* for the appellee (named defendant).

NORCOTT, J. The plaintiff administratrix of the estate of Daniel Vargas brought this dram shop action against the named defendant, the corporate owner of the Bach Dor Tavern in Chaplin, and the defendant C. Lawrence Constantine, sole shareholder of the corporation, alleging that, on February 5, 1987, Daniel Vargas and Mark Marden attended the "happy hour" at the tavern and became noticeably intoxicated. The plaintiff claimed that Vargas subsequently died in a motor vehicle accident while a passenger in Marden's pickup truck as a result of the sale to Marden of intoxicating beverages in violation of General Statutes § 30-102.[1]

---

[1] General Statutes (Rev. to 1987) § 30-102 provides: "DRAM SHOP ACT; LIQUOR SELLER LIABLE FOR DAMAGE BY INTOXICATED PERSON. (a) If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section. In computing such sixty-day period, the time between the death or incapacity of any aggrieved person and the appointment of an executor, administrator, conservator or guardian of his estate shall be excluded, except that the time so excluded shall not exceed one hundred twenty days. Such notice shall specify the time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or

At the close of the plaintiff's case, the named defendant[2] moved for a directed verdict, which the trial court granted. The trial court also denied the plaintiff's motion to open the judgment in order to produce further evidence. The court rendered judgment on the verdict, and this appeal ensued.

On appeal, the plaintiff claims that the trial court should not have (1) granted the defendant's motion for a directed verdict at the close of the plaintiff's case, concluding that the plaintiff failed to present sufficient evidence to establish the defendant's sale of an alcoholic beverage to an intoxicated person under the Dram Shop Act, and (2) denied the plaintiff's motion to open. We reverse the judgment of the trial court.

With respect to the plaintiff's first claim, the standards for review of a trial court's directed verdict are clear. "A verdict may be directed only where the jury could not reasonably reach any other conclusion . . . or where the decisive question is one of law." (Citations omitted.) *Commercial Union Ins. Co.* v. *Frank Perrotti & Sons, Inc.,* 20 Conn. App. 253, 256, 566 A.2d 431 (1989). Generally, directed verdicts are disfavored; see *Boehm* v. *Kish,* 201 Conn. 385, 394, 517 A.2d 624 (1986); and are justified only "if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as

property occurred. No action under the provisions of this section shall be brought but within one year from the date of the act or omission complained of.

"(b) In any civil action brought pursuant to subsection (a) of this section for injury to person or property occurring on or after October 1, 1986, there shall be a rebuttable presumption that the seller who sold alcoholic liquor to the intoxicated person prior to and most proximate in time to the occurrence of the injury is solely liable for any damages payable to the person injured."

[2] No evidence was introduced on the count against the individual defendant, and no claim is made as to him on appeal. As used in this opinion, defendant refers to the named defendant only.

directed; [*Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986)]; *McDonald* v. *Connecticut Co.,* 151 Conn. 14, 17, 193 A.2d 490 (1963); or if the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." Id., 389. Finally, when reviewing the decision of the trial court to direct a verdict, we consider the evidence presented in the light most favorable to the plaintiff. *Commercial Union Ins. Co.* v. *Frank Perrotti & Sons, Inc.,* supra, 259.

The plaintiff contends that, against these standards, the trial court should not have directed a verdict because the jury could reasonably have concluded from the evidence presented that the plaintiff had proven the essential elements of an action brought under the Dram Shop Act. We agree.

The elements of a cause of action based on the Dram Shop Act are (1) a sale of intoxicating liquor, (2) to an intoxicated person, (3) who, in consequence of such intoxication, causes injury to the person or property of another. See *Nelson* v. *Steffens,* 170 Conn. 356, 360, 365 A.2d 1174 (1976). Considering the evidence in the light most favorable to the plaintiff, we find the evidence to be undisputed that Vargas and Marden attended "happy hour" at the Bach Dor Tavern on the evening of February 5, 1987, and, at some point during that evening, both were noticeably intoxicated. The key witness in this trial, bartender Joseph Fournier, testified that around 11 p.m. that evening, Marden was "real sloppy, hanging all over the bar, being quite obnoxious, and real loud."

Our Supreme Court has defined intoxication in pertinent part as meaning "an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies." *Sanders* v. *Officers Club*

*of Connecticut, Inc.,* 196 Conn. 341, 349, 493 A.2d 184 (1985). The defendant in this case does not question the matter of Marden's intoxication at the tavern, nor does it argue that Marden's intoxicated condition at the time of the motor vehicle accident was the proximate cause of the death of his friend, Vargas. Rather, the defendant argued in support of its motion for a directed verdict, and the trial court found, that the plaintiff had failed to present evidence that the defendant *sold* intoxicating liquor to Marden when he was intoxicated.

The essence of the trial court's ruling was that the plaintiff failed to prove the "element of sale to an intoxicated person" either *before* or *after* Marden was identified by Fournier to be intoxicated. The court reached this conclusion notwithstanding the fact that, according to Fournier's own testimony, Marden was "shut off," that is, served no more liquor.

We agree with the defendant that the evidence of a sale to Marden after the crucial point in time so described by Fournier was an insufficient basis from which the jury could reasonably conclude that the defendant's bartenders served Marden anything. After he was shut off by the bartenders, Fournier observed Marden with a beer bottle in his hands. This was the sole evidence regarding Marden and his condition after he was shut off. Fournier testified that neither he nor any other bartender sold Marden anything else after shutting him off. There was no evidence as to where or when Marden got the bottle or what the bottle contained. The court was correct in concluding that the jury could only speculate as to a sale to Marden after he was shut off.

We cannot agree, however, that the jury could not reasonably have found, from the evidence presented,

that Marden had not been served intoxicating beverages while he was in an intoxicated state.

Fournier testified as follows:

"Q. And, did there come a time when Mark Marden was cut off that night?

"A: Yes, there was.

"Q: And, what time was that?

"A: It was shortly thereafter—maybe fifteen, twenty minutes difference.

"Q: Towards eleven?

"A: Yes.

"Q: And, what was the reason that Mark Marden was cut off from drinking?

"A: Well, Mark Marden came to me—at the bar at the end of the bar and he was real sloppy, hanging all over the bar, being quite obnoxious, and real loud. So I figured that he had enough and I wasn't going to serve him any more. . . .

"Q: Do you recall whether Mark Marden had anything to drink that night at the bar after he was shut off?

"A: I didn't sell him any more liquor after that point, after I shut him off.

"Q: All right. And, to your knowledge, did he have anything to drink at the bar after he was shut off?

"A: After he was shut off? We didn't sell him any more liquor after he was shut off."

From this testimony and Fournier's testimony describing Marden's inebriated condition, we find that the jury could reasonably have concluded that Marden was sold and served intoxicating beverages, that is, beer, leading up to and while he was in an intoxicated condition.

"Although a jury cannot base its conclusion upon 'mere guess or speculation,' it is entitled to draw reasonable inferences from the evidence before it. *Lemmon* v. *Patterson Construction Co.*, 137 Conn. 158, 163, 75 A.2d 385 (1950)." *Commercial Union Ins. Co.* v. *Frank Perrotti & Sons, Inc.*, supra. We cannot, nor should the trial court, rule out the possible inference to be drawn from this evidence that the *last* drink served to Marden before he was shut off was served to him while he was intoxicated. The ultimate question of whether a driver's intoxication resulted from his activities at the defendant's bar and whether the bar violated the Dram Shop Act by continuing to serve an already intoxicated driver is for the jury. See *Sanders* v. *Officers Club of Connecticut, Inc.*, supra; see also *Futterleib* v. *Mr. Happy's, Inc.*, 16 Conn. App. 497, 548 A.2d 728 (1988). Here, the trial court took this function away from the jury by granting the defendant's motion for a directed verdict.

Finally, in support of its argument that the trial court properly granted the directed verdict, the defendant points to the fact that the fatal accident occurred approximately two hours after the defendant's bartender refused to serve Marden any more beverages. Given the posture of this case, this claim can only be interpreted as a challenge to the plaintiff's proof on the element of causation. Any claim that it applies to the other elements of the Dram Shop Act would be without merit.

Before addressing the merits of this claim, we must first determine what law applies to this case. At the

time of this incident, the Dram Shop Act included a section (b), since repealed, which provided as follows: "In any civil action brought pursuant to subsection (a) of this section for injury to person or property occurring on or after October 1, 1986, there shall be a rebuttable presumption that the seller who sold alcoholic liquor to the intoxicated person prior to and most proximate in time to the occurrence of the injury is solely liable for any damages payable to the person injured." Public Acts 1986, No. 86-338, §§ 7, 17, effective October 1, 1986, repealed by Public Acts 1987, No. 87-227, § 11. The plaintiff claims that because it was the law in effect at the time of the incident, this law must be applied at trial.[3] We disagree.

While there is a general presumption that legislation is intended to apply prospectively; *Rudewicz* v. *Gagne*, 22 Conn. App. 285, 287–88, 582 A.2d 463 (1990); a procedural change will be given retroactive effect. Id., 288. Rebuttable presumptions fall within the parameters of the rules of evidence; see C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 5.1.4; and, therefore, are procedural. *State* v. *Almeda*, 211 Conn. 441, 454, 560 A.2d 389 (1989). We must, therefore, apply the statute as it existed at the time of the trial, after subsection (b) had been repealed. Accordingly, the rebuttable presumption language is not applicable.

In addressing the merits of this issue, we reach the following conclusions. "The delict defined by § 30-102 is not the sale of liquor to create a condition of intoxication. It is rather the sale of liquor to one who is already intoxicated. No causal relationship between the sale and the injury is required." *Sanders* v. *Officers Club of Connecticut, Inc.*, supra, 348–49.

---

[3] The action was not commenced until January, 1988, and the trial did not begin until September, 1989.

Any evidence that the time lapse in this case may have adversely affected the element of causation was for the jury to decide. It is for the jury to determine what weight should be accorded to that evidence. *Milano* v. *Sayers,* 6 Conn. App. 491, 498, 506 A.2d 162, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986). " 'While the ruling of the trial court on a motion [taking the verdict away from the jury] is entitled to great weight because of the court's familiarity with the facts and circumstances of the case; *Nielson* v. *D'Angelo,* 1 Conn. App. 239, 244, 471 A.2d 965 (1984); the parties are entitled to have issues upon which fairminded persons may differ decided by the jury.' " Id.

Because we have concluded that the trial court should not have granted the defendant's motion for a directed verdict, we need not reach the plaintiff's alternative claim that the court should have opened the judgment.

The judgment of the trial court is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.