[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This is an action in two counts. The first count is based on a claimed violation of the Dram Shop Act. The second count alleges gross negligence and wanton and reckless misconduct on the part of the defendant Zuckerman, "owner and permittee, and doing business as Rivers Edge Club of Pinecrest Country Club and/or by his servants, agents, or employees. . . ."
In her complaint, the plaintiff alleges that she attended a party given by Philip Parkins at the Rivers Edge County Club. This club is part of the Pinecrest Country Club in Shelton and both are owned by the defendant, Robert Zuckerman. CT Page 1324
The defendant leased out the Rivers Edge facilities to Parkins for a party which was held on August 1-2, 1987.
The plaintiff and her sister attended the party. The plaintiff claims that an unidentified, intoxicated person, ("John Doe") was sold or served alcohol by the defendant, and/or his servants, agents, or employees. At approximately 3:00 a.m. "John Doe" shot the plaintiff in the back and she also suffered an injury to the left colon.
The defendant has moved for Summary Judgment on both counts. The claims as to the first count is that the plaintiff cannot prove the dram shop cause of action. The claim as to the second count is that there is no gross negligence caused of action against a seller of alcohol in this state.
 I.
The defendant, in his motion for summary judgment, contends that the plaintiff cannot prove a dram shop cause of action because she has testified that she never saw the person who was holding the gun that shot her, does not know whether the person who shot her was male or female and that she has no information about what the person had to drink and whether this person was intoxicated.
In the defendant's affidavit, the defendant states that he is the co-owner and permittee of Pinecrest. He stated that the "Rivers Edge Club is not a permitted premises since no liquor is sold to the general public on the premises." The defendant insists that he nor any of his employees were on duty on August1-2, 1987 and that they could not and did not serve liquor to any person on that date. The defendant's main argument is that no liquor was sold or made available to the general public by any person employed by him. The defendant contends that Rivers Edge is a banquet facility and was rented out for the purposes of a dance.
The plaintiff asserts that it is a question of fact whether Parkins was an agent of the defendant who sold or served alcoholic beverages at the party. In her affidavit, the plaintiff stated that alcoholic drinks were sold from a bar located inside the Rivers Edge Club. The plaintiff's sister who was also present at the party stated in her affidavit that drinks were sold at Rivers Edge. Parkins stated that he leased Rivers Edge from the defendant and that it was his understanding that the defendant "authorized and knew alcoholic beverages were to be sold and served" at the party since the facility included a bar. Furthermore, Parkins stated that the CT Page 1325 defendant did not inform him that alcoholic beverages were not to be sold and served at Rivers Edge. In a statement made to the Shelton police about the outbreak at Rivers Edge, the defendant stated "[u]sually. . .renters will provide their own food and beverages."
The plaintiff and her sister averred that, at the party, they noticed a black person, who was wearing a brown suit and appeared to be intoxicated, purchase alcohol from the bar located inside Rivers Edge. They stated that this intoxicated person fired two guns into the crowd, they ran out of the club and when they re-entered, the plaintiff was shot. The plaintiff attested that she believed that the intoxicated person who had started shooting inside the club was the same person who shot her because she did not see anybody else shooting a gun that night.
Conn. Gen. Stat. 30-102 states that:
 If any person, by himself of his agent, sells any alcoholic liquor to an intoxicated person, and such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured. . . provided the aggrieved person shall give written notice to such seller. . . such notice shall specify the time, the date, and the person to whom such sale was made, the name and address of the person injured. . .and the time, date and place where the injury to person. . .occurred.
Conn. Gen. Stat. 30-102 (rev'd to January 1, 1991).
"The elements of a cause of action based on the Dram Shop Act are (1) a sale of intoxicating liquor, (2) to an intoxicated person, (3) who in consequence of such intoxication, causes injury to the person or property of another." Kelehear v. Larcon, Inc., 22 Conn. App. 384, 387 (1990).
"The existence of an agency relationship is a question of fact" and "a court must look to the `operative terms' of their agreement or understanding." Beckenstein v. Potter Carrier, Inc., 191 Conn. 120, 133-34 (1987) (construction building case). The "three elements required to show the existence of an agency relationship include: (1) A manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the CT Page 1326 undertaking." Id. (citation omitted). "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses [citations omitted]. Apparent authority thus must be determined by the acts of the principal rather than by the acts of the agent." Id. at 140 (citations omitted).
It is a question of fact (1) whether Parkins was an agent of the defendant, (2) whether alcohol was sold at the party, (3) whether alcohol was served to intoxicated person, and (4) whether this intoxicated purchaser injured the plaintiff.
The motion for summary judgment is denied as to the first count, because there are material questions of fact and the jury's resolution of these facts will determine whether plaintiff can sustain her Dram Shop Act claim.
 II.
The defendant contends that a gross negligence allegation has never been recognized as a cause of action in Connecticut because Connecticut has never differentiated between degrees of negligence in tort law.
Be that as it may, the plaintiff has in this count also alleged "wanton and reckless misconduct." In Kowal v. Hofher181 Conn. 355 (1980), the Supreme Court held that there is a common law right of action against a supplier of alcohol to an intoxicated person sounding in wanton and reckless misconduct.
The Court found the trial court erred in striking a count based on wanton and reckless misconduct, Id., 15 362, even though the plaintiff had also alleged "gross negligence" in that count.
In the recent case of Quinnett v. Newman, 213 Conn. 343
(1990), the court, while holding that no action for common law negligence would lie against vendors of alcohol for injuries caused by intoxicated persons because the Dram Shop Act had filled this field, nonetheless impliedly reaffirmed the existence of a cause of action based on "wanton and reckless misconduct." Id., at 345.
Since the motion for summary judgement as to the second count was based solely on this legal issue, the motion as to this count is also denied.
Therefore, the defendant's motion for summary judgment is denied. CT Page 1327
NIGRO, JUDGE